(Decided 13th April, 1869.)

---

THE MAYOR, ALDERMEN AND COMMON COUNCIL OF FREDERICK *vs.* GEORGE S. GROSHON.

*Maryland Code—Effect of its adoption upon Laws not embodied in it — Power of the Legislature over Municipal Corporations—Act of 1847, ch. 224— Injunction to restrain Trespass — When Corporations will be restrained by Injunction.*

The object of the Maryland Code, adopted by the Legislature at its January Session, 1860, was to arrange and simplify the whole body of the Statute Law of the State; and the Legislature in adopting it as a substitute for all the Public General and Public Local Statute Law then existing, plainly intended an entire repeal of all such statutes of that character then on the Statute Book, as were not embraced in the codification.

A municipal corporation, being organized for political purposes, is constantly subject to the control of the Legislature, and is liable at all times to have its public powers, rights and duties modified, changed or abolished, as the Legislature may deem proper.

The power or privilege granted to the town of Frederick, by the Act of 1847, ch. 224, entitled "An Act to open and widen Carroll Creek, in Frederick city," was for the public good, and created no vested rights

as against the State. It was liable to be repealed as well by the general law adopting the Code, as by a special law expressly altering or abolishing the powers of the corporation; and was in fact effectually and completely abrogated and repealed by the Act adopting the Code.

An injunction will not issue to restrain a trespass simply as such, but it will be granted where the injury alleged is irreparable, or where full and adequate relief cannot be had at law, or where the trespass is of a character to work destruction of the property as it had been held and enjoyed, or where it is necessary to prevent a multiplicity of litigation.

A Court of Equity will restrain corporations from a gross abuse of their powers when to the injury of individuals; and will not suffer powerful corporate bodies, with whom it is always very difficult to deal on equal terms, to take under color of authority, proceedings which are of an illegal character, or which are of doubtful legality, if by so doing they place those against whom they are proceeding, in a condition of peril from which it might be difficult to extricate themselves.

APPEAL from the Circuit Court for Frederick County, in Equity.

The appeal in this case is from a decree making perpetual an injunction restraining the appellant from taking possession of certain land of the appellee in Frederick city, condemned by the city for certain public uses.

The nature of the case is fully stated in the opinion of the Court.

The cause was argued before BARTOL, C. J., STEWART, GRASON, MILLER and ALVEY, J.

*Jas. McSherry, Jr.,* and *Fred. J. Nelson,* for the appellant:

Where there is full, adequate and complete remedy at law, equity will not interfere. *Williams vs. West,* 2 *Md.,* 174; *Clayton, et al. vs. Carey,* 4 *Md.,* 26.

If the repeal of the Act of 1847, ch. 224, be in issue under the pleadings, the appellants contend that it is unrepealed, because: 1st. The Legislature had *no power* to repeal it. The appellants, "The Mayor, Aldermen and Common Council of Frederick," are a body corporate. *Act of* 1816, *ch.* 74. As

such, they are capable of enjoying *privileges* and immunities. *Angell & Ames on Corp.*, sec. 2; 3 *Kent's Comm.*, 459, *(margin.)*

The Act of 1847, ch. 224, is a special Act passed by the Legislature, at the instance of sundry citizens of Frederick, granting to the Mayor, Aldermen and Common Council of Frederick, and their successors, the power to widen Carroll Creek. The power thus granted is a *franchise.*

The doctrine of the inviolability of a grant made by the State, is applicable to *public* corporations. *Angell & Ames on Corp.*, secs. 33 *and* 767; *Bailey vs. Mayor, &c. of New York*, 3 *Hill*, 531; 2 *Kent's Comm.*, 275, *(margin;) Dartmouth College vs. Woodward*, 4 *Wheat.*, 694.

" Corporate *franchises* attached to *public* corporations, are *legal estates coupled with an interest*, and are protected as *private property."* A corporation may therefore be *public*, and yet have and exercise a *franchise* not incident to its ordinary governmental functions; *quoad hoc*, it will be treated as a *private* corporation. Thus the appellant's charter, Code of Public Local Laws, Article 11, section 81, empowers them to "purchase and hold real, personal and mixed property." With reference to any property the appellants may hold under this provision, they must be treated as a *private* corporation, even "though the public may derive a common benefit from it." *Moodalay vs. East India Co.*, 1 *Bro. Ch. R.*, 469; 2 *Kent's Comm.*, 275, *(margin.)*

The Act of 1847 grants to the appellants the power to condemn for their own use, in fee simple, certain property for a specific purpose, not connected with, nor incident to their ordinary municipal functions. They were empowered to widen Carroll Creek for the single purpose of preventing a recurrence of the disastrous consequences occasioned by sudden risings of the stream. This power slumbered unexercised, until the great flood of July last, demonstrated the absolute necessity of using it. The power granted by the Act, is no part of the appellants' *political* franchises. *Political* power

granted to a *public* corporation may be revoked. *The People vs. Morris,* 13 *Wend.,* 332.

2d. Because if the Legislature had the power to repeal the Act of 1847, ch. 224, it was expressly exempted from repeal by the adoption of the 3d section of Article 1 of the Code of Public General Laws. *Code Pub. Gen'l Laws, Art.* 1, *sec.* 3.

The applicability of this section to *public* corporations is perfectly apparent, if a distinction between a public and private corporation be kept in view. The distinction we allude to is thus stated by Chancellor KENT: "In respect to public corporations which exist only for public purposes, the Legislature, under proper limitations, may change, enlarge, restrict or destroy them. Private corporations are contracts between the government and the corporators, and the Legislature cannot repeal, impair or alter the rights and privileges conferred by the charter, against the consent and without the default of the corporation judicially ascertained and declared." 2 *Kent's Comm.,* 305, 306, (*margin.*)

A *private* corporation is beyond legislative control. The adoption of the Code could therefore in no way affect any right or privilege held by a *private* corporation. If no rights, &c., of a *private* corporation could have been impaired by the adoption of the Code, this section can only apply to such corporations as *could* have been affected by the adoption of the Code.

Again, the Act adopting the Code purports to repeal *only* such *Public General* and *Public Local* Acts as are not embraced in the Code. *Act of* 1860, *ch.* 1, *sec.* 1.

No *private* Act is contained in the Code, no Act conferring power upon a *private* corporation. The Legislature was dealing only with *Public* Laws.

The Act of 1860, ch. 1, then repeals any Public General or Public Local Act not incorporated in the Code, *unless* there be some saving or reservation of such Act from repeal.

The 2d section of the Act of 1860, ch. 1, provides "that the *savings and reservations* and rules of interpretation con-

tained in the 1st Article of the Public General Laws, be and the same are hereby made a part of this Code."

The 3d section of Article 1, *saves* and *reserves* from repeal rights and privileges which would have been repealed by reason of not being incorporated in the Code; not the rights of *private* corporations, because the Legislature could not interfere with them, and because the Act adopting the Code repeals only Public General and Public Local Acts not incorporated in the Code.

*William P. Maulsby,* for the appellee :

The charge in this cause is not a mere temporary trespass, which can be recompensed in damage. It is a claim of right under charter provisions, not the act of a wrong doer, without color or pretence of right. Even if a trespass, as the act complained of *destroys* the *premises* as it has been held and enjoyed, injunction lies. *White vs. Flannigain,* 1 *Md.,* 539, &c.; *Shipley vs. Ritter, et al.,* 7 *Md.,* 413; *Roman vs. Strauss,* 10 *Md.,* 97 ; *Baugher, and others, vs. Crane,* 27 *Md.,* 36, &c.

Assuming that the remedy by injunction in this case is the appropriate remedy in case the corporation has no right by virtue of its charter to condemn the premises, the appellee contends that the corporation has no right, under its charter, to condemn the premises of the appellee for the purposes of widening Carroll creek. The appellants contend that such power is vested in them by the Act of 1847, chap. 224. The appellee takes the position that if not accepted prior to the adoption of the Code of Public Local Laws, said Act has ceased to exist, not being incorporated in the charter of the Corporation of Frederick. *Article* 11, *Code of Public Local Laws, entitled Frederick, sections* 81 *to* 147 *inclusive.*

The Act passed at January session, 1860, chap. 1, adopts the Code of Public General Laws and Public Local Laws, as a substitute for all Public General Laws and Public Local Laws heretofore passed by the Legislature. The savings and

reservations contained in the articles of interpretation, being made part of the Code.

Public municipal corporations are under the exclusive control of the Legislature, and may be repealed, altered or amended, at the pleasure of the Legislature. They have no vested rights in opposition to the powers of the Legislature. 2 *Kent's Comm.*, 274; *The People vs. Morris,* 13 *Wend.* 329, &c.; *The Regents, &c. vs. Williams,* 9 *G. & J.,* 398, 401 ; *State, use of Washington County, vs. Balt. & Ohio R. R. Co.,* 12 *G. & J.,* 430, 440.

Assuming that the grant of powers under the Act of 1847, chap. 224, is saved by the reservations in section 3, Article 1st, of the Code, yet the charter, as codified, being accepted by the Corporation of Frederick, as evidenced by sundry amendments, as for instance, Act of 1864, chap. 1, and such charter containing no provision similar to the powers conferred by the Act of 1847, chap. 224, that Act is no longer in force, and is repealed by the new charter. *The Regents, &c. vs. Williams,* 9 *G & J.,* 419 ; *The King vs. Westwood,* 20 *E. C. L. R.,* 1; *Angel & Ames on Corporations,* 59, &c.

The case now before the Court is within the principles decided in the case of *White vs. Flannigain,* 1 *Md.,* 544, upon two of the propositions decided by the Court: first, where full and adequate relief cannot be granted at law ; second, where the trespass goes to the *destruction of the property* as it had been held and *enjoyed.* Upon either of these grounds the injunction can be maintained.

ALVEY, J., delivered the opinion of the Court.

The object of the bill in this case was to obtain an injunction to restrain the appellants, a municipal corporation, from appropriating the land and premises of the appellee to public purposes.

The appellee alleged that the appellants had proceeded by inquisition to condemn some part of his premises for the use and purpose of the town, and that they had, by virtue of such

condemnation, entered upon and taken possession of the land so condemned, and were then engaged in excavating, digging up and removing the soil of such land; and that the business of the appellee, being that of a coal dealer, having a coal yard upon the premises interfered with, would be seriously impaired, if not destroyed, by the acts of the appellants. It was also alleged that the proceedings of the appellants, in condemning and taking possession of the appellee's land, were wholly without warrant or authority of law.

The injunction was granted, and the appellants afterwards put in their answer, and moved to dissolve.

The answer admits all the material allegations of the bill, except the want of authority for the proceedings on the part of the corporation in condemning and taking the appellee's land; and for that they attempt to justify under and by virtue of the Act of Assembly of December session, 1847, chap. 224, entitled "An Act to open and widen Carroll creek in Frederick City." That Act authorized the Mayor, Aldermen and Common Council of Frederick, to open and widen the channel of Carroll creek, which runs through that town, so as to prevent any part of the town from being inundated by floods; and, to that end, they were authorized to have condemned any property whatever that might be necessary, in the event of disagreement as to the compensation to the owners. The answer also insists that there was ample remedy at law, and that therefore there was none in equity.

After hearing, upon motion to dissolve, the injunction was continued, and it is from the order continuing the injunction that this appeal is taken.

There are two questions presented:

1st. Whether there was legal authority in the appellants for taking and appropriating the appellee's property for the use of the town; and if not, 2dly. Whether there is sufficient ground shown by the bill for an injunction.

1. As to the first question, it is not pretended that there is any other authority for the action of the appellants in taking

the appellee's property than that supposed to be derived from the Act of 1847, chapter 224. If that Act is not in force, it is conceded that the proceedings taken for the condemnation of the appellee's property was without warrant of law, and that, consequently, the appellants were trespassers and wrong-doers. Was the Act in force? Its provisions are not to be found in the codified laws in reference to Frederick, and it is conceded that the Act has been altogether omitted from the Code. If it be still in force, then, it is so notwithstanding the Act of the Legislature, passed at the January session, 1860, which declared that the two volumes of the Code, the first containing the Public General Laws, and the second the Public Local Laws, should be "adopted in lieu of and as a substitute for all the Public General Laws, and the Public Local Laws, heretofore passed by the Legislature of Maryland." The Act of 1847 was clearly a public local law. Can it have existence, then, independently of the Code? It is contended, on the part of the appellants, that the Act of 1847 vested in them certain rights and privileges which were preserved to them by the 3d section of Art. 1, of the Code of Public General Laws, which declares that "No rights, property or privileges held under a charter or grant from this State shall be in any manner impaired or affected by the adoption of this Code." But it is clearly too much to say that that precautionary section of the Code was ever intended to apply to a case like this, and to keep in its original form and separate existence any portion of the Public Local Laws of the State. To do so would involve the necessity of constantly examining the great multitude of Public Local Acts in regard to the municipal corporations of the State, in the scattered and disconnected form in which they originally passed, and the doubt and controversy would be endless as to what were the rights and privileges of such corporations existing at the adoption of the Code. The object of that work was to arrange and simplify the whole body of the statute law of the State; and the Legislature in adopting it as a sub-

stitute for all the Public General and Public Local Statute Law then existing, plainly intended an entire repeal of all such statutes of that character then on the statute book as were not embraced in the codification; for otherwise, instead of simplification, the greatest confusion would ensue.

The section of the Code relied on was inserted from abundant caution, and from supposing it possible that in the new arrangement and re-adoption of the law, some question might arise affecting the rights, property or privileges held under charters or grants of the State. But such a case as this was never in the contemplation of the section.

A still broader proposition, however, is contended for on the part of the appellants, and that is, that the Act of 1847 is not only not repealed, but that it was not competent to the Legislature to repeal it. That by the Act certain rights and franchises vested in the corporation that could not be divested by the legislature, although it may have manifested a plain intent so to do. But such an entire exemption from legislative control, predicated of a municipal corporation, in regard to a power or privilege such as is here involved, is a bold proposition to be contended for at this day, and to maintain it would involve a radical departure from one of the best established doctrines in the jurisprudence of the country. No principle is better established, or more fundamental in its character, than that a municipal corporation, being organized for political purposes, is constantly subject to the control of the Legislature, and is liable at all times to have its public powers, rights and duties modified, changed or abolished, as the Legislature may deem proper. Such bodies politic derive no exemption from the power of the Legislature by reason of the fact of their incorporation, for, as was said by Mr. Chief Justice MARSHALL, (*Dartmouth College vs. Woodward,* 4 *Wheat.,* 638:) "The character of civil institutions does not grow out of their incorporation, but out of the manner in which they are formed, and the objects for which they are created. The right to change them is not founded

on their being incorporated, but on their being the instruments of government, created for its purposes. The same institutions, created for the same objects, though not incorporated, would be public institutions, and, of course, controllable by the Legislature. The incorporating act neither gives nor prevents this control." It is clear that the power or privilege granted to the town of Frederick, by the Act of 1847, was for the public good, and created no vested rights as against the State. It was ordinary legislation as contradistinguished from compact; and as such it was liable to be repealed by the Legislature, as well by the general law adopting the Code, as by a special law expressly altering or abolishing the powers of the corporation. . *The People vs. Morris,* 13 *Wend.,* 325. It follows, from what has been said, that this Court is clearly of opinion that the Act of 1847, under which the appellants' justify, was effectually and completely abrogated and repealed by the Act adopting the Code, passed at the January session, 1860.

2. The next question, then, is as to the sufficiency of the grounds shown for the injunction; and in regard to this we have no difficulty.

It is true, an injunction will not issue to restrain a trespass simply as such, but it will be granted where the injury alleged is irreparable, or where full and adequate relief cannot be had at law, or where the trespass is of a character to work destruction of the property *as it had been held and enjoyed,* or where it is necessary to prevent a multiplicity of litigation. *White vs. Flannigain,* 1 *Md.,* 525; *Jerome vs. Ross,* 7 *John. Ch. Rep.,* 330. As in the case of *Hughes vs. The Trustees of Weston College,* 1 *Ves.,* 188, where commissioners of a turnpike company had taken possession of, and were digging for gravel in the garden and grounds of the complainant, who was a gardener by occupation, the turnpike act having specially excepted gardens, orchards, planted walks, &c., LORD HARDWICKE deter-termined it to be a proper case for an injunction, though the party had his remedy at law. The ground of the injunction

in that case was, that the garden and orchard, as such, were being destroyed. So in this case, the complainant is a coal dealer, and has his coal yard upon the premises, a part of which was being taken for the use of the town, whereby, as he alleges, his business, as dealer in coal, would be seriously impaired, if not destroyed. And although the appellants deny that the appellee's business would necessarily be seriously impaired, it is admitted that the premises are used as a coal yard, and it is shewn that the coal house is upon that portion of the premises proposed to be taken by the appellants; and, of course, whatever portion may be required for the purpose of widening the creek, will be destroyed. See *Reddall vs. Bryan*, 14 *Md.*, 444.

But there is another ground upon which the appellee is entitled to the injunction, and that is, that corporations will be restrained by a Court of Equity from a gross abuse of their powers, when to the injury of individuals. That Court will not suffer powerful corporate bodies, with whom it is always very difficult to deal on equal terms, to take, under color of authority, " proceedings which are of an illegal character, or which are of doubtful legality, if, by so doing, they place those against whom they are proceeding, in a condition of peril, from which it might be difficult for them to extricate themselves." *Pinchin vs. London and Blackwall Railway Co.*, 31 *Eng. L. & Eq. Rep.*, 252; *Bonaparte vs. Camden and Amboy R. R. Co.*, 1 *Baldw.*, 231; *Western Md. R. R. Co. vs. Owings*, 15 *Md.*, 204.

We think there was very sufficient ground for the injunction, and there is nothing in the answer of the appellants to justify the removal of it. The order appealed from will, therefore, be affirmed, with costs to the appellee.

*Order affirmed.*

(Decided 13th April, 1869.)