## G. L. BYARS v. STATE.

No. A-85.   Opinion Filed June 30, 1909.

(102 Pac. 804.)

1.  CONSTITUTIONAL LAW—Work and Labor—Violation of Eight Hour Law. Defendant, a paving contractor, in violation of article 4, c. 53, p. 517, Laws 1908, being "An act to put into effect section 1 of article 23 of the Constitution, providing what shall constitute a day's work in all cases of employment by and on behalf of the state or any county or municipality; prescribing penalties for violations thereof," etc., employed Wm. Hammond and other laborers to labor on the streets of Guthrie more than eight hours per day. Upon trial and conviction in the county court of Logan county he appealed to this court, contending that the statute limiting the time of labor on public work to eight hours a day was unconstitutional. **Held**, that said statute is a direction of the state to its agents, and is constitutional and valid.

2.  SAME. A person who contracts for public work is not by reason of the provisions of this statute deprived of his liberty or his property without due process of law, nor denied the equal protection of the laws within the meaning of the fourteenth amendment.

3.  MUNICIPAL CORPORATIONS—Agents of State—Paving a Public Work. Municipal corporations are in every essential only auxiliaries of the state for the purposes of local government. The Constitution of Oklahoma expressly reserves to the state control over public highways, including roads, streets, and alleys of all municipalities. The paving of a street, whether done by the state directly or by one of its municipalities, is a work of a public, not private, character.

4.  SAME—Eight Hour Labor Law—Violation by Contractor. It is within the power of a state, as guardian and trustee for its people and having full control of its affairs, to prescribe the conditions upon which it will permit public work to be done on behalf of itself, its counties, cities, or other municipalities. In the exercise of these powers, it may by statute provide that eight hours shall constitute a day's work for all laborers employed by or on behalf of the state or any of its municipalities, and make it unlawful for any one thereafter contracting to do any public work to require or permit any laborer to work longer than eight hours per day, and require such contractors to pay the current rate of daily wages.

(Syllabus by the Court.)

2  Cr.—31

*Error from Logan County Court; J. C. Strang, Judge.*

G. L. Byars was convicted of a violation of Eight-Hour Labor Law (Sess. Laws 1908, p. 517, c. 53, art. 4), and he brings error. Affirmed.

Plaintiff in error, G. L. Byars (hereinafter designated as defendant), was by information filed in the county court of Logan county charged with a violation of the provisions of article 4, c. 53, p. 517, Sess. Laws 1908, commonly known as the "Eight-Hour Labor Law," which information reads as follows:

"In the County Court of Logan County, State of Oklahoma.
"The State of Oklahoma v. G. L. Byars, Defendant.
"Information.

"In the Name of and by the Authority of the State of Oklahoma comes now James Hepburn, county attorney in and for Logan county, Oklahoma, who prosecutes for and on behalf of said state in all courts sitting in said county, and duly authorized and empowered to inform of all offenses committed or triable therein, and gives the court to know and be informed that heretofore, to wit, on or about the 21st day of January, A. D. 1909, at and within the county of Logan, and State of Oklahoma, one G. L. Byars being then and there the agent of one J. F. Hill, which said J. F. Hill then and there had a contract for and on behalf of a certain municipality, to wit, the city of Guthrie (a municipal corporation existing under and by virtue of the laws of the State of Oklahoma) for the paving, curbing, draining and guttering of a certain street, to wit: Noble avenue in said city of Guthrie, did then and there knowingly and unlawfully work and cause to be worked one Wm. Hammond and other parties to affiant unknown for more than eight hours for said day's work, which said Wm. Hammond and other parties to affiant unknown were then and there under the supervision and control of him the said G. L. Byars.

"Contrary to and in violation of the statutes in such case made and provided, and against the peace and dignity of the state.
"James Hepburn, County Attorney.

"State of Oklahoma, County of Logan—ss.:

"C. L. Dougherty being first duly sworn on oath says that he has read and knows the contents of the within and foregoing

information, and that the allegations and statements therein contained are true.

"C. L. Dougherty.

"Subscribed and sworn to before me this 28th day of Jan. A. D. 1909.

"[Seal.] Carl L. Rice, Notary Public.

"My commission expires April 25, 1911.

"State of Oklahoma, County of Logan—ss.:

"James Hepburn, being duly sworn upon oath, deposes and says that he is the County Attorney in and for said Logan County, Oklahoma, that he has read and knows the contents of the within and foregoing information and that the allegations and statements therein contained are true as he is informed and verily believes.

"James Hepburn, County Attorney.

"Subscribed and sworn to before me this 28th day of Jan. 1909.

"[Seal.] J. C. Strang. County Judge."

To which information on said day defendant filed his demurrer as follows:

"State of Oklahoma v. G. L. Byars.

"Demurrer.

"Now comes the defendant by Decius & Levy, his attorneys, and demurs to the information, and for cause of demurrer says:

"First. Said information does not set up a state of facts which constitute a misdemeanor of any nature.

"Second. that the statute under which same is purported to have been instituted is unconstitutional and void.

"Third. That the statute under which said information is instituted is invalid because it contravenes the 14th amendment to the Constitution of the United States.

"Decius & Levy,

"Attorneys for Defendant."

This demurrer was by the court overruled. Defendant excepted. The defendant, being arraigned, entered a plea of "Not guilty," and announced ready for trial. Whereupon the state and the defendant waive a jury, and agree that the case should be submitted to the court upon an agreed statement of facts, as follows:

"State of Oklahoma, Logan County—ss.;

"State of Oklahoma v. G. L. Byars.

"Agreed Statement of Facts.

"It is hereby stipulated and agreed in the above cause as follows: That Guthrie, Oklahoma, is a city of first class. That one J. F. Hill, a contractor, entered into a contract with reference to paving and guttering of a certain street in said city (a copy of which contract is hereto attached and made a part hereof). That one G. L. Byars, the defendant above named, is agent of said J. F. Hill. That said G. L. Byars employed one William Hammond and others to perform labor of shoveling dirt in the prosecution of said work on Noble avenue in said city, and that said William Hammond was permitted to work nine hours on each calendar day. That the agreement with William Hammond is that he is to receive twenty cents per hour, and no more. That said William Hammond worked nine hours voluntarily, and that he was employed at his own solicitation. That he was hired and employed without knowledge or consent of the city of Guthrie, and that neither the city or its officers had or exercised any control over him. That the contract had no provision as to the number of hours laborers should work per calendar day, nor any provision as to their compensation, but left the matter free as to manner and means of performing the contract. That said work was healthful outdoor work, not dangerous, hazardous, or in any way injurious to life, limb, or health, and could be performed for a period of nine hours each working day of the week without injury from so doing. That the labor he was performing was in no respect or manner more dangerous to the health or hazardous to life or limb than that of persons doing the same kind or character of work as employes of private corporations. That said work so done as provided in said contract was to be paid for solely by the owners of the property abutting on said street, and that said city was not obligated to pay anything therefor. That said work was to be done and performed under article 1, c. 10, p. 160, Sess. Laws 1907-1908, and that all of said work was to be paid for by the property owners. That said city is obligated to take such proceedings as are necessary to levy and collect assessments therefor. That said J. F. Hill, contractor, entered into bond conditioned

that he would perform said work, and that he would maintain same for a period of five years.

"State of Oklahoma.

"By James Hepburn,

"County Attorney, Logan County.

"G. L. Byars, Defendant.

"By Decius & Levy, Attorneys.

"Contract.

"This contract made and entered into this 11th day of December, 1908, by and between J. F. Hill, of Chicago, Ill., hereinafter called the contractor, party of the first part, and the City of Guthrie, Oklahoma, hereinafter called the city, party of the second part, witnesseth: That whereas the said contractor is the lowest and best bidder for making improvements under and by virtue of the provisions of a resolution passed by the city council of the city, on the 24th day of September, 1908, on the following street or avenue, to wit: Noble avenue from the west line of Drexel Boulevard to the east line of fifteenth street by constructing and guaranteeing for a period of five years, as hereinafter provided, an asphalt pavement on the street or avenue and the unpaved portions thereof above described, and in the manner provided for in said resolution and the specifications of the city engineer, approved at the meeting of city council, November 21, 1908:

"Now, therefore, the said contractor hereby covenants and agrees to furnish all the material and to perform all the work necessary to complete the said improvements according to the terms of said resolution and in conformity to the plans and specifications on file in the city clerk's office above referred to, to the satisfaction and acceptance of the city engineer and the city council of said city; and, after the completion and acceptance of the asphalt pavement, it shall be maintained and kept in good repair for a period of five years by the contractor, at his own expense during said period without further compensation than that provided for in this contract for the first cost of said work, all as provided in the said specifications. The said contractor agrees to commence work within fifteen days from the time this contract is confirmed by the council of the city, and the work shall be completed to the satisfaction and acceptance of the city engineer and the city council of the city within two hundred and fifty (250) working days from and after the approval of this contract. Working days shall

include all days except only Sundays and legal holidays and such others as are hereinafter excepted. It is further agreed and understood by the parties hereto that the work herein contemplated shall be commenced at such point or points and prosecuted in such manner and with such force as the city engineer of the city may direct, and for each working day beyond the time fixed in this contract for the final completion of the improvement, such completion shall be delayed by the contractor; said contractor shall pay to the city the sum of ten ($10.00) dollars per day to cover continuing expense of engineer and inspectors. It is further expressly agreed and understood by and between the parties hereto that this contract is made subject to the specifications heretofore adopted on the 21st day of November, 1908, by the city council of Guthrie; and the proposal of the said J. F. Hill as made on the 10th day of December, 1908, and accepted on the 11th day of December, 1908, copies of which said specifications and proposal are hereto attached and made a part hereof.

"The party of the first part further agrees to pay for the work and labor of all laborers and teamsters, teams, and wagons employed on the work and for all material used therein. To prevent all disputes and litigations, it is further agreed by the parties hereto that the city engineer and public improvement committee shall in all cases determine the amount and quality of the several kinds of work which are to be paid for under this contract; and they shall decide all questions which may arise relative to the execution of the work under this contract on the part of the contractor, subject however to confirmation by the council in case of appeal to council. This contract is entered into subject to the approval or rejection of the council of the city of Guthrie, and shall not bind either party until so approved and confirmed and is subject to all city ordinances and the laws of Oklahoma now in force relating to such matters. In consideration of the completion by the said contractor, of all work embraced in this contract, in strict conformity with the specifications hereinbefore referred to, the city hereby agrees to pay to the said contractor the following prices, viz.:

"Schedule.

"The city further agrees to pay for all said work in street improvement bonds to bear interest at six (6%) per cent. per annum issued by the city, which the contractor agrees to accept at par, the forms of which are to be determined by the parties hereto

and embraced in a resolution or ordinance to be passed by the city council. The city further agrees that it will cause the levy and collection of assessments against the property liable to the same under the laws of the State of Oklahoma, and will levy and collect annually a sufficient tax to pay the bonds so to be issued, with the annual interest thereon as the same shall become due; and the expense of the levying and collection of said asssssments shall be borne by the city, and the city agrees to pay out of the funds derived from such tax levy said bonds and interest promptly when due to the holders of such securities at the fiscal agency of the said city in the City of New York, or at the office of the treasurer of the city of Guthrie at the option of the holders thereof, and the city agrees to cause to be made promptly the annual collection of a sufficient amount of money to pay the securities so issued together with all interest charges. The city further agrees to make to said contractor payments in bonds from time to time as the cost of such improvement is ascertained on the written estimate of the city engineer the amount of such payments to be ninety (90%) per cent. of the said estimate as the same shall be approved by the council retaining the ten (10%) per cent. thereof until the final completion of the work to be done under this contract. Said estimates of the city engineer shall include completed work, work in progress and materials delivered on the streets to be improved. The remaining ten per cent. together with the final estimate and any other amounts due the contractor shall be paid within thirty (30) days after the final completion and acceptance of said work. To each such estimate there shall be added approximately five per cent. in addition to the contract price for the work and materials, to provide for all other expenses incurred by the city incident to the improvement; and said contractor shall accept street improvement bonds for said additional five per cent. and pay par therefor to the city, provided that the contractor may have the option of selecting to pay to the city a lump sum approximately equal to five per cent. of the whole contract and to receive in pay therefor street improvement bonds in an amount equal to such payment which amount shall be included in the estimate and whenever in the judgment of the engineer, the contractor shall have satisfactorily filled his contract, and the work done by him shall have been accepted by the mayor and council, the city shall pay to said contractor the full amount of the final estimate, less all previous payments. The city further agrees to

furnish all necessary water for the execution of the work at its hydrants at a price to be agreed upon between the contractor and the water commissioner and said water commissioner shall regulate all waste and excessive use of water by the contractor. It is further agreed that the contractor shall, within fifteen (15) days from the confirmation of this contract by the council of the city, furnish bonds in the sum of twenty-five (25%) per cent. and ten (10%) per cent., respectively, of the contract price for the faithful completion of the work and the maintenance of the same with surety to be approved by the city council. The city agrees to pass and adopt such petitions, ordinances, orders, and resolutions and to take such other proceedings as will give to the bonds, which are paid to the contractor under this agreement the highest possible market value and as will best and most speedily give effect to the provisions of the statute and this contract and the officers and employes of the city shall at all times, and by all proper means, facilitate the work to be performed hereunder. The city shall perform all the obligations imposed upon it by this contract and the laws of the state of Oklahoma promptly and without unnecessary delay, particularly with reference to the assessment of benefits, levying and collection of the special assessment and payment of the proceeds thereof contemplated by this agreement and the laws of the state above mentioned.

"In witness whereof the contractor, J. F. Hill, has caused these presents to be signed by Henry Ranstron, his duly authorized agent and attorney, and the city of Guthrie has caused these presents to be signed by its mayor and attested by its clerk and the seal of the city to be affixed hereto the day and year first above written.

"J. F. Hill,
"By Henry Ranstron.

"Witness to signature:
"L. E. Decius.
"The City of Guthrie, Oklahoma,
"By C. M. Barnes, Mayor.

"Attest: E. W. Kinnan, City Clerk of the City of Guthrie, Oklahoma. [Seal.]"

The court, having been fully advised in the premises, found the defendant guilty of knowingly and wilfully working one Wm. Hammond for more than eight hours as a day's work, as charged

in the information. Whereupon defendant files his motion for a new trial, which motion was by the court overruled and exception allowed, whereupon defendant filed his motion in arrest of judgment, which motion omitting the formal parts is as follows:

"Comes now the defendant and moves the court in arrest of judgment and as grounds therefor says: First. The verdict is not sustained by the evidence. Second. The information does not set up such a state of facts as would constitute a misdemeanor of any nature. Third. The statute under which the action is instituted is in contravention of the Constitution of Oklahoma. Fourth. That the statute under which said information is instituted is invalid as being in conflict with the Constitution of the United States, and particularly the fourteenth amendment thereto. Decius & Levy, Attorneys for Defendant."

This motion was by the court overruled and exception allowed. Whereupon the court pronounced sentence, fixing the punishment at $50 fine, and costs, from which judgment the defendant prosecutes error to this court. Said cause was submitted on briefs at the May, 1909, term of this court.

*Decius & Levy,* for plaintiff in error.

*Charles West,* Atty Gen., and *E. G. Spilman,* Asst. Atty. Gen., for the State.

No copies of briefs reached the reporter.

DOYLE, JUDGE. (after stating the facts as above). This case involves the validity under the Constitution of the United States and the Constitution of the state of Oklahoma of the statute commonly known as the "Eight-Hour Labor Law," being article 4, c. 53, p. 517, Sess. Laws 1908. The case has been fully stated, in order that there may be no dispute as to what is involved in its determination. The Constitution of the state of Oklahoma provides in section 1, art. 23 (section 435, Bunn's Ed.):

"Eight hours shall constitute a day's work in all cases of employment by and on behalf of the state or any county or municipality."

Senate Bill No. 79, approved May 27, 1908, being the statute under which defendant is prosecuted reads:

"An act to put into effect section 1, of article 23, of the Constitution, providing what shall constitute a day's work in all cases of employment by and on behalf of the state or any county or municipality; prescribing penalties for violation thereof, and establishing Labor Day and declaring an emergency.

"Be it enacted by the people of the state of Oklahoma:

"Section 1. Eight hours shall constitute a day's work in all cases of employment by and on behalf of the state or any county or municipality.

"Sec. 2. Any person, firm or corporation, or any agent, contractor or subcontractor, who shall violate the provisions of this Act, or who shall aid, abet, assist, connive at, or permit any violation thereof is guilty of a misdemeanor and upon conviction shall be punished by a fine of not less than fifty ($50.00) dollars nor more than one thousand ($1,000.00) dollars and by imprisonment of not less than thirty days nor more than six months or by both fine and imprisonment. Each day such violation continues shall constitute a separate offense.

"Sec. 3. Not less than the current market rate of wages in the locality where the work is performed shall be paid."

Counsel for the defendant contend: That under the terms of this statute, under the guise of a police regulation when it is not so in fact, the right of the employer and employe to contract is abridged in such a manner as to be an infringement upon the constitutional rights of both parties. That said statute is invalid because it contravenes the fourteenth amendment to the Constitution of the United States, and that "the contract for paving is not 'entered into by and on behalf of the city of Guthrie.' The city of Guthrie as a municipality is acting simply as an agent of the property owner, whose property abuts on the streets along the proposed improvement. While the city has supervisory power over the streets, the improvement as shown by the statement of fact is to be paid for solely by the property owners. Work of the kind mentioned therein does not come within the purview of the statute. Work in behalf of the city would be work for which the city was liable, and which was to be paid for by the city, and not abutting property owners." We believe the contention of counsel for

defendant is without merit, and is unsupported by reason or authority. We see in this law no infringement of constitutional rights.

There is nothing on which to base the statement that this statute is enacted by virtue of the police power of the state, and for this reason it is unnecessary to discuss or consider it. The foregoing provision of the Constitution was formulated and adopted by the people of Oklahoma as a part of the organic law. The manifest purpose of this provision is to promote the industrial welfare of the people by fixing a high standard for employes on public work. The statute in question is clearly calculated to promote the purpose and public policy of the state as expressed in the Constitution, and does not restrict or interfere with the right or liberty of the employe and employer to contract, and can only be regarded as a direction by a principal to his agent, and therefore as a matter of consideration to the principal and agent only. Oklahoma as a sovereign state is no less free as a party to contract than any person in the state, and the lawmaking power has the right to provide that contracts made by the state or any agent of the state shall be executed in conformity with the requirements of the Constitution and the statute, and the only way to make such laws effective is to make their violation criminal. The state has declared by constitutional provision and by this statute that eight hours shall constitute a day's work in all cases of employment by and on behalf of the state or any county or municipality, and that all laborers or employes engaged in the service of the state or any county or municipality shall not work thereunder more than eight hours per day, and that any violation of the statute shall be punished as a misdemeanor. The state does not take away the property of the citizen or interfere with his personal liberty. The right by virtue of which the state regulates the use of its property is not only one of dominion and sovereignty. It is also the same in quality and character as the right of the person with whom it contracts, and, when the state engages directly or indirectly in the construction of public improvements, it may employ and re-

fuse employment to whom it will, the same way and to the same extent that any citizen may exercise the right in reference to his private and personal affairs. The right is the same in either case. This proposition is so elementary that a citation of authorities is unnecessary.

A contractor bidding for work to be done by the state, county, or municipality understands in making his estimates that under the law eight hours per day is the maximum time which his employes may work. He cannot be prejudiced for all other bidders on the same work have equal knowledge of the law governing the hours of labor to be performed on public work. It is obvious that otherwise an unscrupulous contractor would have an unfair and undue advantage over his law respecting competitors who base their estimates upon, and intend to conform to the requirements of the statute. A contractor is not compelled to bid. He does so voluntarily with full knowledge of the restrictions imposed by the statute, and all contracts made by any agent of the state must conform to the provisions of the statute, and, if not actually inserted therein, they would still be as the law of the state a part of the contract.

The case of *Atkin v. State of Kansas*, 191 U. S. 207, 24 Sup. Ct. 124, 48 L. Ed. 148, is precisely in point on every question involved in the case at bar. The statute of Kansas is similar to ours. Atkin contracted with Kansas City to pave a public street in said city, and hired a laborer to shovel dirt for 10 hours a day in execution of the work. He was prosecuted and convicted. The case was tried upon an agreed statement of facts as in this case. He appealed to the Supreme Court of Kansas, which court affirmed the judgment, and sustained the validity of the statute. The case was then taken to the Supreme Court of the United States, where the judgment of the Supreme Court of Kansas was affirmed.

Justice Harlan, delivering the opinion of the court says:

"Assuming that the statute has application only to labor or work performed by or on behalf of the state, or by or on behalf of a municipal corporation, the defendant contends that it is in

conflict with the fourteenth amendment. He insists that the amendment guarantees to him the right to pursue any lawful calling, and to enter into all contracts that are proper, necessary, or essential to the prosecution of such calling, and that the statute of Kansas unreasonably interferes with the exercise of that right, thereby denying to him the equal protection of the laws. *Allgeyer v. Louisiana,* 165 U. S. 578, 17 Sup. Ct. 427, 41 L. Ed. 832; *Williams v. Fears,* 179 U. S. 270, 21 Sup. Ct. 128, 45 L. Ed. 186. In this connection reference is made by counsel to the judgment of the Supreme Court of Kansas in *Ashby's Case,* 60 Kan. 101, 106, 55 Pac. 336, 338, in which that court said: 'When the eight-hour law was passed, the Legislature had under consideration the general subject of the length of a day's labor, for those engaged on public works at manual labor, without special reference to the purpose or occasion of their employment. The leading idea clearly was to limit the hours of toil of laborers, workmen, mechanics, and other persons in like employment to eight hours without reduction of compensation for the day's services.' 'If a statute,' counsel observes, 'such as the one under consideration, is justifiable, should it not apply to all persons and to all vocations whatsoever? Why should such a law be limited to contractors with the state and its municipalities? * * * Why should the law allow a contractor to agree with a laborer to shovel dirt for 10 hours a day in performance of a private contract, and make exactly the same act under similar conditions a misdemeanor when done in the performance of a contract for the construction of a public improvement? Why is the liberty with reference to contracting restricted in the one case and not in the other?'

"These questions—indeed, the entire argument of defendant's counsel—seem to attach too little consequence to the relation existing between a state and its municipal corporations. Such corporations are the creatures—mere political subdivisions—of the state for the purpose of exercising a part of its powers. They may exert only such powers as are expressly granted to them, or such as may be necessarily implied from those granted. What they lawfully do of a public character is done under the sanction of the state. They are, in every essential sense, only auxiliaries of the state for the purposes of local government. They may be created, or, having been created, their powers may be restricted or enlarged, or altogether withdrawn at the will of the Legislature; the authority of the Legislature, when restricting or withdrawing such powers,

being subject only to the fundamental condition that the collective and individual rights of the people of the municipality shall not thereby be destroyed. *Rogers v. Burlington,* 3 Wall. 654, 663, 18 L. Ed. 79; *United States v. Railroad Co.,* 17 Wall. 322, 328, 329, 21 L. Ed. 597; *Mount Pleasant v. Beckwith,* 100 U. S. 514, 525, 25 L. Ed. 699; *State Bank of Ohio v. Knopp,* 16 How. 369, 380, 14 L. Ed. 977; *Hill v. Memphis.* 134 U. S. 198, 203, 10 Sup. Ct. 562, 33 L. Ed. 887; *Barnett v. Dennison,* 145 U. S. 135, 139, 12 Sup. Ct. 819, 36 L. Ed. 652; *Williams v. Eggleston,* 170 U. S. 304, 310, 18 Sup. Ct. 617, 42 L. Ed. 1047.

"In the case last cited we said that 'a municipal corporation is, so far as its purely municipal relations are concerned, simply an agency of the state for conducting the affairs of government, and as such it is subject to the control of the Legislature.' It may be observed here that the decisions by the Supreme Court of Kansas are in substantial accord with these principles. That court in the present case approved what was said in *City of Clinton v. Cedar Rapids & Missouri River R. R. Co.,* 24 Iowa, 455, 475, in which the Supreme Court of Iowa said: 'Municipal corporations owe their origin to, and derive their powers and rights wholly from, the Legislature. It breathes into them the breath of life, without which they cannot exist. As it creates so it may destroy. If it may destroy, it may abridge and control. Unless there is some constitutional limitation on the right, the Legislature might, by a single act if we can suppose it capable of so great a folly and so great a wrong, sweep from existence all of the municipal corporations of the state and the corporations could not prevent it. We know of no limitation on this right so far as the corporations themselves are concerned. They are, so to phrase it, the mere tenants at will of the Legislature.' See, also, *In re Dalton,* 61 Kan. 257, 59 Pac. 336, 47 L. R. A. 380; *State ex rel. v. Lake Koen Co.,* 63 Kan. 394, 65 Pac. 681; *State ex rel. v. Com'rs of Shawnee Co.,* 28 Kan. 431, 433; *Mayor, etc., v. Groshon,* 30 Md. 436, 444, 96 Am. Dec. 591.

"The improvement of the boulevard in question was a work of which the state, if it had deemed it proper to do so, could have taken immediate charge by its agents; for it is one of the functions of government to provide public highways for the convenience and comfort of the people. Instead of undertaking that work directly, the state invested one of its governmental agencies with power to care for it. Whether done by the state directly or by

one of its instrumentalities, the work was of a public, not private, character. If, then, the work upon which the defendant employed Reese was of a public character, it necessarily follows that the statute in question in its application to those undertaking work for or on behalf of a municipal corporation of the state does not infringe the personal liberty of any one. It may be that the state in enacting the statute intended to give its sanction to the view held by many, that, all things considered, the general welfare of employes, mechanics, and workmen, upon whom rest a portion of the burdens of government will be subserved if labor performed for eight continuous hours was taken to be a full day's work; that the restriction of a day's work to that number of hours would promote morality, improve the physical and intellectual condition of laborers and workmen, and enable them the better to discharge the duties appertaining to citizenship. We have no occasion here to consider these questions, or to determine upon which side is the sounder reason; for, whatever may have been the motives controlling the enactment of the statute in question, we can imagine no possible ground to dispute the power of the state to declare that no one undertaking work for it or for one of its municipal agencies should permit or require an employe on such work to labor in excess of eight hours each day, and to inflict punishment upon those who are embraced by such regulations, and yet disregard them. It cannot be deemed a part of the liberty of any contractor that he be allowed to do public work in any mode he may choose to adopt without regard to the wishes of the state. On the contrary, it belongs to the state, as the guardian and trustee for its people and have control of its affairs, to prescribe the conditions upon which it will permit public work to be done on its behalf, or on behalf of its municipalities. No court has authority to review its action in that respect. Regulations on this subject suggest only considerations of public policy. And with such considerations the courts have no concern.

"If it be contended to be the right of every one to dispose of his labor upon such terms as he deems best—as undoubtedly it is —and that to make it a criminal offense for a contractor for public work to permit or require his employe to perform labor upon the work in excess of eight hours each day is in derogation of the liberty both of employes and employer, it is sufficient to answer that no employe is entitled, of absolute right and as a part of his liberty, to perform labor for the state; and no contractor for

public work can excuse a violation of his agreement with the state by doing that which the statute under which he proceeds distinctly and lawfully forbids him to do.

"So, also, if it be said that a statute like the one before us is mischievous in its tendencies, the answer is that the responsibility therefor rests upon legislators, not upon the courts. No evils arising from such legislation could be more far-reaching than those that might come to our system of government if the judiciary, abandoning the sphere assigned to it by the fundamental law, should enter the domain of legislation, and upon grounds merely of justice or reason or wisdom annul statutes that had received the sanction of the people's representatives. We are reminded by counsel that it is the solemn duty of the courts in cases before them to guard the constitutional rights of the citizen against merely arbitrary power. That is unquestionably true. But it is equally true—indeed the public interests imperatively demand—that legislative enactments should be recognized and enforced by the courts as embodying the will of the people, unless they are plainly and palpably, beyond all question, in violation of the fundamental law of the Constitution. It cannot be affirmed of the statute of Kansas that it is plainly inconsistent with that instrument. Indeed, its constitutionality is beyond all question.

"Equally without any foundation upon which to rest is the proposition that the Kansas statute denied to the defendant or to his employe the equal protection of the laws. The rule of conduct prescribed by it applies alike to all who contract to do work on behalf either of the state or of its municipal subdivisions, and alike to all employed to perform labor on such work.

"Some stress is laid on the fact, stipulated by the parties for the purpose of this case that the work performed by defendant's employe is not dangerous to life, limb, or health, and that daily labor on it for 10 hours would not be injurious to him in any way. In the view we take of this case, such considerations are not controlling. We rest our decision upon the broad grounds that the work being of a public character, absolutely under the control of the state and its municipal agents acting by its authority, it is for the state to prescribe the conditions under which it will permit work of that kind to be done. Its action touching such a matter is final so long as it does not by its regulations infringe the personal rights of others; and that has not been done. The judgment of the Supreme Court of Kansas is affirmed."

The case of *Ryan v. City of New York,* 177 N. Y. 271, 69 N. E. 599, in the Court of Appeals of New York, is also in point. That distinguished citizen and eminent jurist, Hon. Alton B. Parker, as Chief Justice announcing the decision of the court in that case, says:

"Has the Legislature power to provide that its employes and those of the several municipalities shall receive 'not less than the prevailing rate' of wages in the locality? In other words, has the Legislature—which possesses all the power of the sovereign not expressly withheld by the Constitution—power to provide that work done for it or its several subdivisions shall be paid for at such a rate as individuals and corporations in the same locality pay? That question was before this court some years ago in so far as it affects the right of the Legislature to fix the rate of wages of laborers upon the works of the state. *Clark v. State of New York,* 142 N. Y. 101, 36 N. E. 817. In 1889 the Legislature passed an act (Laws 1889, p. 508, c. 380) providing that the rate of wages upon the public works of the state should be $2 a day, That was more than the then prevailing rate, and there were those who questioned the power of the state to interfere with its agents in fixing the wages of men working under them. They thought the superintendent of public works had the sole power of fixing wages of employes in that department, and therefore could defy the direction of the Legislature as to the amount of compensation to be paid, although he could disburse such moneys only as were appropriated by the Legislature, and they entreated the Attorney General to commence an action to have the court declare the impotency of the Legislature to interfere on the important subject of compensation to laborers. But, when the case reached this court in 1894, the Attorney General was unable to point to the provision of the Constitution which divested the representatives of the people for all matters of legislation of this power, and vested it in the several inferior officials having charge of certain administrative duties conferred upon them in the majority of instances by acts of the same Legislature. The court—unaffected, as was its duty, by the argument that the statute was unwise, and mindful that its duty was discharged fully, and could only be discharged by declaring whether the Legislature had the power to enact the statute complained of—unani-

2 Cr.—32

mously held that the power belonged to it. Judge O'Brien writing for the unanimous court, says (142 N. Y. 101, 105, 36 N. E. 817, 818): 'There is no express or implied restriction to be found in the Constitution upon the power of the Legislature to fix and declare the rate of compensation to be paid for labor or services performed upon the public works of the state.'

"The principle of that decision controls this one. There the Legislature undertakes to fix arbitrarily the sum to be paid every employe of the state. Here the Legislature undertakes to provide for the payment of not less than the prevailing rate of wages, not only to the direct employes of the state, but also to its indirect employes working in several subdivisions—the cities, counties, towns, and villages. In the administration of the affairs of those subdivisions, as well as in those of the state at large, the Legislature is unrestrained unless by express provisions of the Constitution. As expressed in *Roder's Case*, 166 N. Y. 1, 29, 59 N. E. 716, 723, 52 L. R. A. 814, 82 Am. St. Rep. 605: 'The authority of the state is supreme in every part of it, and in all the public undertakings the state is the proprietor. For convenience of local administration the state has been divided into municipalities, in each of which there may be found local officers exercising a certain measure of authority, but in that which they do they are but the agents of the state, without power to do a single act beyond the boundary set by the state acting through its Legislature.' Thus all of these agencies and employes in the several municipalities are doing the work of the state, which is the sovereign and master.

"Nevertheless, we find that the argument is again made, as in 1894 in Clark's Case, that the Legislature is without power to interfere with the agencies it has created for the government of the municipalities. And this is said in the face of the decision in Clarke's Case, and notwithstanding the fact that the Legislature has the power at any time to absolutely change the form of government of a municipality, to blot out of existence any municipal charter, or to consolidate several municipalities under a single charter, as it did in the creation of Greater New York. And this argument is made in spite of the many well-known illustrations of power of the Legislature to control the affairs of municipalities. The scope of that power is illustrated by the construction of the new aqueduct by a board created by the Legislature, the expense being charged upon the city of New York, although

not a single officer of the city had a voice in controlling the expenditure of the millions that its construction involved, and by the act compelling the elevation of the Harlem Railroad tracks in the city of New York, and the imposition of one-half of the expense, amounting to several millions, upon the city of New York, the work all being done through an agency created by the state.

"Not only does the Legislature fix the salaries of the principal municipal officers throughout the state, but in the city of New York, where this case arises, it fixes the rate of compensation for many laborers. The street cleaning department will serve as an illustration. The charter provides for the payment of definite sums in some cases, and for a maximum sum in others, for a force numbering over 5,000 employes in that department and including 3,100 sweepers and 1,600 drivers, hostlers, and stable foremen. The charter in this respect has the support of Clark's Case, *supra*. Now, there are a few mechanics connected with the department whose compensation is not fixed by the charter, and who, therefore, come under the prevailing rate provision of the labor law. Their compensation could be fixed, of course, at a definite sum, as that of the other employes is, but, instead, it is provided, in effect, that they shall be paid at a rate not less than that paid by others for similar services in that locality. Certainly no one can argue that the Legislature can provide that the street sweeper shall be paid for example $2 a day, but cannot provide that he shall be paid the prevailing rate of wages when that happens to be $2. But, if one can be found who will attempt to make such an argument, surely it can be safely said that he cannot find a constitutional provision upon which to rest it."

The foregoing opinions and authorities therein cited set forth the true principles upon which this statute must be sustained. If the principles enunciated, and the conclusions therein reached are correct, and we believe they are, and hereby adopt them, they conclusively refute and fully answer the contention of defendant that the statute under consideration in this case is unconstitutional and void.

The Constitution of Oklahoma expressly reserves to the state control over all public highways, including the roads, streets, and alleys of its municipalities. The opening, construction and maintenance of public highways is purely a governmental function,

whether done by the state directly or by one of its municipalities, for which the state is primarily responsible. And it is immaterial whether such public work is paid for by the state, the county, the city, or by the benefited property'owners. It is a work of a public, not private, character. The manner of payment does not change the character of work.

For the reasons stated, the judgment of the county court of Logan county is hereby affirmed, and the cause remanded with direction to carry into effect the judgment.

FURMAN, PRESIDING JUDGE, and BAKER, JUDGE, concur.