**CLYMER v ZANE et (9 cases)**

Ohio Appeals, 2nd Dist, Madison Co

Nos 98 to 106, inc.

Decided Nov 24, 1933

Joseph Hogan, Columbus, for plaintiff in error.

Harford A. Toland, Columbus, for defendant in error.

## OPINION

By HORNBECK, PJ.

It will be observed that §17-4 GC authorizes the public authority, defined in the act, before advertising for bids for the construction of the public improvement to be let by contract, to fix and determine a fair rate of wages to be paid by the successful bidder to the employees in the various branches or classes of the work, which shall not be less than the prevailing rate of wages paid for each such branch or class * * * in the locality wherein the physical work upon such improvement is to be performed. The rate of wages so fixed shall be printed on the bidding blanks.

Pursuant to the authority of the statute, all bidders on the improvements were required, as a condition of their bid and proposal, to agree to pay "not less than 35c per hour for any class of labor necessary to complete the work, without charge or deduction for transportation, rental of tools, or any other items and that these provisions shall be a part of any sub-contract entered into in connection with the project. Payroll records shall be open to the inspection of the State's representatives at all times."

Defendant's proposal bid contained this obligation. It will be noted that the language of the proposal just quoted is different from the language of the statute, §17-4 GC, the proposal bid employing the language "any class of labor necessary to com-

plete the work," the statute providing, "employees in the various branches or classes of the work."

Some claim is made that the provision of the contract just quoted is broader than the language of the statute. The Director of Highways could have incorporated in the contract different and more drastic provisions relating to rate of pay to employees than set forth in the statute and enforced the provision not as statutory but as a common law obligation. Annotation to County ex Hildebrand v Feldshaw, 18 A.L.R., 1227. But the violation of such a contract in particulars beyond the terms of the statute would not subject the contractor to payment of the penalty. It is our belief that the language of the contract in the case under consideration and the provisions of the statute are alike in meaning. In any event, our determination can be made upon the language of the statute which must, under the facts in this case, be read into the contract. **Royal Indemnity Co. v Day & Maddock Co., 114 Oh St, 58; Wyoming v Citizens Trust & Guaranty Co., 9 Oh Ap, 225.**

It appears from the record that the defendant undertook, through his employees, to perform the necessary operations required to secure the gravel and sand which he used in the construction of the improvement provided by the contract. The material thus produced was taken directly from the gravel bank onto the improvement or to a place adjacent thereto and immediately, or soon after being placed, was used on the improvement. In our judgment, under this state of fact, the taking and preparing of this gravel used upon the construction was a "class of the work of construction" and the employees working in the gravel bank and in operations incident thereto, were protected by the terms of the statute and the defendant was bound to compensate them as he had agreed to do in his proposal bid which, by the terms thereof, was carried into his contract. The securing and preparing of the gravel and sand thereafter used on the improvement was one of the various branches or classes of work as it was carried on by the defendant. Had he purchased this gravel and sand in the open market from some other producer, we, of course, would have a different question. Had he let the contract to furnish the sand and gravel on the job, the sub-contractor would have been bound to pay the statutory wages.

Coming to the second question: It is claimed that because the contractor may

have acted in good faith in the belief that he was not bound to pay thirty-five cents per hour, it is inequitable to assess the penalty provided by the statute against him. This would be true if we were operating in the field of equity but we are not and are enforcing legal liability created by contract under the statute. A failure to observe the provisions of the statute is a violation and specific intent is not an element of the offense.

It is finally urged that the penalty section of the statute, §17-6 GC is violative of Article 14, §1, Constitution of the United States:

"Nor shall any state * * * deprive any person of life, liberty or property, without due process of law; nor deny to any person within its jurisdiction equal protection of the laws."

And **Article 1, §16, Ohio Constitution:**
"All courts shall be open and every person having injury done his lands, goods, person or reputation, shall have a remedy in due course of law and shall have justice administered without denial or delay."

The penalty of §17-6 GC is not, in our judgment, so great as to be unreasonable or confiscatory in the light of the fact that the contractual obligations assumed by the State carried compensating benefits to the defendant for all obligations assumed by him.

Supporting the claim of the unconstitutionality of the statute defendant cites **DeWitt v State, 108 Oh St, 513.** The court had under consideration §1465-74 GC, which provided that after the Industrial Commission had ascertained and determined the amount due an injured employee or his dependents in case of death, if the award shall not be paid by such employer to the person entitled thereto within ten days after receiving notice of the amount thereof as fixed by and determined by the board, the penalty provided shall attach. Those of the judges who held the clause to be unconstitutional were of opinion that the penalty being imposed within ten days after award, if not paid, resulted by indirection in a denial of the benefits of the equal protection and due process clauses of the State and Federal constitutions. The time within which the penalty would attach operating before the order of the commission could be tested on review imposed so great a risk upon the employer as to invade his rights of equal protection of the law. The theory

of the opinion of the majority in the De-Witt case does not apply to the instant case.

No fact nor authority is directed to our attention which overcomes the presumption attending the constitutionality of the statute. We know of no constitutional inhibition against the penalty which would not obtain against the legislation authorizing the fixing of minimum hours of labor and the rate of compensation by contract. The trend of modern decision is to support the constitutionality of minimum wage and limitation of working hours provisions in statutes, especially when they relate to public employment.

Adkins v Children's Hospital, 261 U. S., 525.

Atkin v Kansas, 191 U. S. 207
Ellis v U. S., 206 U. S., 246
Ryan v New York, 177 N. Y. 271
Jahn v Seattle, 120 Washington, 403
Byers v State, 2 Okla. Crim. Rep., 481.

The court in Byers v State, supra, says:

"No person has the vested right to work for the state or any of its municipalities upon public work; but this is rather a privilege granted by the state or municipality, and may be granted upon such terms and conditions as the state may see fit, not in conflict with law. And this is true whether the work be done by the state or municipalities directly, or done through the medium of a contractor who holds the contract with the state."

We have no doubt whatever that penalty provision of the legislation under consideration is constitutional.

The trial court did not err in directing the jury to return a verdict for the plaintiffs in the amounts claimed in their respective petitions, including the penalty.

The judgment will be affirmed.

KUNKLE and BARNES, JJ, concur.