(No. 19884.

CHARLES E. FISHER, Appellee, *vs.* THE DEPARTMENT OF PUBLIC WORKS AND BUILDINGS *et al.* Appellants.

*Opinion filed February 21, 1930.*

Oscar E. Carlstrom, Attorney General, (B. L. Catron, of counsel,) for appellants.

Hibbs & Pool, for appellee.

Mr. Justice Heard delivered the opinion of the court:

Appellee, Charles E. Fisher, filed his bill in chancery in the circuit court of Sangamon county against the Department of Public Works and Buildings, its director, the State superintendent of highways, together with the State disbursing officers, to enjoin them from awarding any contract for the construction of a hard-surfaced road on section 117 of Route 100 of the State Bond Issue act of 1923, as located by the Department of Public Works and Buildings from Bluffs to an intersection with Route 36 at a point known as Ebaugh's corner, on the grounds that the location of said section is not described in the act as one of the highways to be improved but is wholly outside of the highways forming a part of Route 100; that it does not traverse any intervening community and is not a direct, practicable or economical route to afford reasonable connections between the points on said route named in the act; that section 117 is not a minor deviation, and that construction of a hard road on section 117 would cause an illegal payment and disbursement of public moneys without warrant or authority of law. Appellants, who were named as defendants, filed their joint and several answers to the bill, and upon a hearing the court entered a decree for an injunction as prayed in the bill, from which an appeal was taken by appellants to this court.

Route No. 100 is described in the Bond Issue act as follows: "Beginning at a point on Route No. 9 near Banner and extending in a southwesterly direction to Frederick,

running along Route No. 78 from a point near Liverpool to a point opposite Havana, and running along Route No. 3 from Frederick to Beardstown and from Beardstown running along the east side of the Illinois river to a point on Route No. 36 and running along Route No. 36 to Detroit, and from Detroit running along the west side of the Illinois river to Kampsville, affording Banner, Havana, Frederick, Beardstown, Meredosia, Bluffs, Florence, Detroit, Pearl, Kampsville and the intervening communities reasonable connections with each other." (Smith's Stat. 1929, p. 2537.)

Bluffs and Florence are named in the act as places, with their intervening communities, to be afforded reasonable connections with each other. The question in this case is where the road between Bluffs and Florence is to be located and where such road shall connect with Route 36.

Route 100 is not a purely local route but runs approximately 200 miles from Kampsville, in Hardin county, to Banner, in Fulton county, where it joins Route 9, which extends from east to west entirely across the State and at Peoria makes direct connection by hard-surfaced roads with all points easterly, northerly and westerly. It is distinctively an Illinois river route, forming a link in a chain of Illinois river routes extending in a northeasterly and southwesterly direction approximately from the source to the mouth of the river, consisting of Routes 4, 7, 29, 9 and 100. Florence is southwesterly from Bluffs. Section 117 as located by the Department of Public Works and Buildings runs southeasterly from Bluffs through Exeter to Ebaugh's corner, where it joins Route 36, thence south along Route 36 to Winchester, thence straight west to Florence, approximately 20.35 miles. Ebaugh's corner and Winchester are each 4.50 miles east of a line running due south from Bluffs. Exeter is a little over two miles east of such line. Bluffs contains about 1000 inhabitants, Exeter 200, and Winchester, the county seat of Scott county, about 1600. The road from Bluffs to Ebaugh's corner runs through a hilly,

wooded country and crosses two good-sized creeks over bridges which are not up to the standard of the State department. This road has quite a few grades, with a maximum of 5.96 per cent. Some years ago Route 36 was built as a part of the sixty million dollar bond issue State-wide system of hard roads. Prior to the building of Route 36 practically all the traffic between Bluffs and Florence for about fifty years went over a road along the west edge of a ridge of bluffs lying south of Bluffs, known as the Bluff road. This road ran in a southwesterly and northeasterly direction and in the same general direction as the remainder of Route 100. This road connected with what is now Route 36 about 3.52 miles east of Florence. The country west of the Bluff road and between it and the Illinois river, consisting of about 20,000 acres, was in a state of nature mostly swampy and subject to overflow from the Illinois river and Mauvaisterre and other creeks. Several years ago two drainage districts were organized, the land drained, the swamps transformed into most fertile farming lands, houses, barns and other necessary farm improvements erected, and large crops of wheat, oats, rye and corn raised each year. The only overland outlet to market for the greater portion of the produce of this territory is over the Bluff road, or a branch thereof constructed since the organization of the drainage districts, which meets Route 36 one and one-half miles east of Florence. Oxville, with two stores, a church, school house and a population of about fifty people, is located less than half a mile from the Bluff road, and Bloomfield, located on this road, has two stores, a school house and a church. There are about 136 families living in this valley, extending from Bluffs to Route 36.

The construction of the road from Bluffs to Ebaugh's corner is estimated to cost about $95,000 less than the construction of the Bluff road and the newer road, but this does not include any estimate for the bridges on the road as located, one of which the department has not as yet

determined to be utilizable. The distance from Bluffs to Florence *via* Ebaugh's corner and Winchester is 20.35 miles, by way of the Bluff road 14.21 miles, and by the combination of the Bluff road and the newer road 11.24 miles. Concerning the latter road, the division engineer of the Department of Public Works and Buildings testified that it was feasible to build and when completed would be a good, practicable road, not varying much in elevation and with no perceptible grades, except possibly around the bridges. Although Winchester is larger than Bluffs and Florence and is the county seat of Scott county, it is not mentioned in the One Hundred Million Dollar Bond Issue act as one of the cities through which Route 100 is to pass while Bluffs and Florence are, and Winchester is mentioned as one of the cities on Route 36 in the Sixty Million Dollar Bond Issue act. This is some evidence of the intention of the legislature that the road was to go directly from Bluffs to Florence and not by way of Winchester.

The location of Route 100 through Exeter and Winchester can only be upheld on the theory that they are intervening communities between Bluffs and Florence. This court in *Watts* v. *Department of Public Works,* 328 Ill. 587, had occasion to define the term "intervening community" as used in these acts, and in so doing said: "We are of the opinion that as used in the act under consideration here, an 'intervening community' is intended by the legislature to mean persons living more or less in proximity, who for the purpose of travel between the principal cities mentioned on the routes defined would naturally select approximately the same route or general direction of travel. The reasonable connection to be secured by the State-wide system of hard roads is between the principal cities of the route defined and certain communities. Such communities are those which intervene or lie between the principal cities mentioned. To comply with the law the route must be so laid out. The Department of Public Works and Buildings has no juris-

diction to build hard roads unless this is done." Winchester and Exeter do not "intervene or lie between" Bluffs and Florence. A person making a round trip between those places, going by way of Winchester and Exeter, would travel 18.22 miles further than going by the shorter of the two roads west of the bluffs and 12.14 than by the longer. While the road as located by the department from Bluffs to Ebaugh's corner is more convenient for traffic going from Bluffs to Winchester, Jacksonville and Springfield, yet through traffic coming from the northeast on Route 100 bound for Jacksonville and Springfield would find it nearer and more convenient to leave Route 100 at points farther to the north and east before coming to Bluffs. While the distance from Bluffs to Winchester is some farther by the roads west of the bluffs and not as convenient for traffic between Bluffs and Winchester, yet Route 100 is a part of a State-wide system of hard-surfaced roads, and the primary interest to be considered in the location of such route is that of the State at large and not of the particular locality in which the road is built. (*Watts* v. *Department of Public Works, supra; MacGregor* v. *Miller,* 324 Ill. 113; *McKean* v. *County of Carroll,* id. 243.) The department does not have unlimited discretion in the location of routes.

We are of the opinion that the construction of a hard-surfaced road upon the route as located by the Department of Public Works and Buildings from Bluffs through Exeter to Ebaugh's corner is not in accordance with the provisions of the One Hundred Million Dollar Bond Issue act defining Route 100 and not in accordance with the purposes of the State-wide system of hard roads as shown by the provisions of the statute, and that, therefore, the Department of Public Works and Buildings and its officers are without jurisdiction to so construct this road.

The decree of the circuit court is therefore affirmed.

*Decree affirmed.*