**BOARD OF COM'RS OF HARMON COUNTY v. STATE HIGHWAY COMMISSION.**

No. 24003. Opinion Filed May 2, 1933.

208

C. H. Madden, Harry O. Hicks, and W. C. Austin, for plaintiffs in error.

J. Berry King, Atty. Gen., and W. C. Lewis, Asst. Atty. Gen., for defendants in error.

WELCH, J. This is an appeal from the order and judgment of the trial court denying plaintiff any relief upon the facts alleged in the pleadings and shown upon the trial. The facts are that at a special election called and held for the purpose of voting on the proposed issuance of county bonds for the construction of hard surfaced roads, the citizens of Harmon county, Okla., authorized the issuance of bonds for the construction of such a permanent road, "beginning at a point on the Texas line on the western boundary of Harmon county, Okla., and extending east through Hollis, and to a point northwest of Gould; thence to cross the railroad east through Gould, and on south and east to the Jackson county line, substantially as United States No. 62 was at that time located." The proclamation, notice of election, and ballots specifically described the roads to be built, where they were to commence and where they were to end.

Thereafter, in January, 1931, bonds were issued and sold in the sum of $75,000, and the money delivered to the Highway Commission upon the understanding and agreement that the Commission would furnish the balance of the money necessary and con-

struct the road as above set out, and for which the bonds were authorized at the election.

The Highway Commission accepted said money and built a portion of said highway from the Texas line east about eleven miles. Thereafter, the Highway Commission let a contract to the Kadane Construction Company for the construction of the balance of said highway "east through Gould and on south and east to the Jackson county line."

Thereafter the Federal Bureau of Highways intervened and demanded of the State Highway Commission that the balance of said highway be constructed on a different route north of the route for which the bonds were voted, and which was agreed upon between the State Highway Commission and the county commissioners of Harmon county. Compliance with this demand was required under penalty of withdrawal from the state of Oklahoma of federal aid in road construction. Thereupon, and in consideration of said demand, the State Highway Commission canceled out its contract for the construction of the balance of the voted and agreed highway, intending to comply with the demand of the federal bureau and construct said highway upon said different north route, and to abandon the remaining balance of the voted and agreed highway.

This suit was then instituted by the plaintiff, board of county commissioners of Harmon county, Okla., against the Highway Commission, wherein plaintiff asks relief as follows: That the Highway Commission be required to specifically perform the conditions of the contract under which they received the $75,000; that the Highway Commission be enjoined from contracting for and constructing said highway upon any route other than the one for which the bonds were voted; that, in the event the court concluded it should not require the Highway Commission by mandamus to specifically perform its contract, then, and in that event, that plaintiff have return of the money paid to the Highway Commission upon the contract, and for such other and further relief as plaintiff should then be entitled to have.

It was agreed that the Highway Commission had endeavored in good faith to carry out the provisions of the contract with plaintiff, and would have done so had not the federal bureau, by the withdrawal of federal aid from the state of Oklahoma, demanded that the Commission construct the highway on the other and different route.

In this action the defendant contends that plaintiff is not entitled to have judgment for the specific performance of the contract, nor to enjoin defendants from constructing the road on the other and different route, nor judgment for the return of the money, or any part thereof.

All of the facts were agreed upon, and the only question is one of law. The trial court found that plaintiff was not entitled to the injunctive relief sought; that plaintiff was not entitled to have judgment for the specific performance of the contract, and that plaintiff was not entitled to judgment for the return of the money or any part thereof, and from this judgment the plaintiff appeals.

It will be observed that the people voted bonds for a highway on a fixed route in Harmon county, and the county commissioners delivered over to the State Highway Commission $75,000 of the bond money upon a contract by the terms of which the State Highway Commission agreed to put sufficient other monies with the $75,000 and construct the highway along all of the same fixed route. The State Highway Commission did complete a portion of said highway along a portion of said fixed route about eleven miles. For convenience and brevity, that portion will be referred to as the "completed road." The State Highway Commission then contracted with a road builder to construct a highway along the balance of the fixed route, but on account of conditions that arose thereafter, and objections and demands made by the federal bureau of roads, the State Highway Commission concluded that, in order to avoid loss of federal aid to the state, it must, and did, cancel its contract with the road builder, and abandoned its plan to construct a highway along the said balance of said fixed route "to cross the railroad east through Gould and on south and east to the Jackson county line," and decided in lieu thereof to construct another highway, or the other demanded highway, some distance north of the theretofore fixed route. For convenience and brevity the other highway demanded by the federal bureau, and finally determined upon by the State Highway Commission, will be referred to as the "north road," and that portion of the fixed route abandoned by the State Highway Commission will be referred to as the "south road." The route of the "north road" is from the "completed road" eastward to the Jackson county line and on to the town of Duke in Jackson) county.

In this action the plaintiff seeks to enjoin the construction of the "north road," and to compel the State Highway Commission, by mandamus, to specifically perform its contract to build the "south road"; or to have a return of the $75,000 in case plain-

210

tiff be held not entitled to have such specific performance.

As to the first proposition, we observe that the "north road" is to be constructed with state highway funds or federal aid funds, or both, and that none of the Harmon county funds are to be used thereon. Then the plaintiff had no right whatever to enjoin the construction of the "north road." To hold otherwise would be an unwarranted interference with the discretion of the State Highway Commission as to the location and improvement of the highways of the state. Wentz v. Ingenthron, 146 Okla. 165, 294 P. 154; Wentz v. Board of County Commissioners of Lincoln County, 147 Okla. 173, 295 P. 599; Wentz v. Dawson, 149 Okla. 94, 299 P. 493; Hawks v. Seay, 150 Okla. 160, 1 P. (2d) 148. The fact that a contract existed in this case between plaintiff and the State Highway Commission calling for the construction of the "south road," can form no basis for a right in plaintiff to enjoin the building of the "north road."

We next consider plaintiff's right to require construction of the "south road," or to the return of the money. When the State Highway Commission contracted with plaintiff, and plaintiff had complied by paying in the $75,000, as Harmon county's stipulated share of the cost of said road project, it was clerk the duty of the State Highway Commission to complete the highway along all of the fixed route, including the "south road," but that does not mean that the State Highway Commission was bound in all events to discharge such contracted duty to plaintiff by building such highway, when on account of the position subsequently taken by the federal bureau, to build the particular road would be to act in utter disregard of the duties owed by the State Highway Commission by law to the citizenship of the state as a whole, and when to build the particular road would result in very great loss to the state as a whole, as a direct result thereof. While the State Highway Commission could by contract create a duty to plaintiff, the State Highway Commission could not contract away to plaintiff its discretion in reference to the discharge of its duties to the remaining citizenship of the state. Nor by such contract could the State Highway Commission grant to the plaintiff a vested interest in, or a prior right to, the public funds, either then on hand, or to be thereafter collected, which plaintiff would be entitled to have recognized in all events, and in utter disregard of the dire consequences that would result to the remaining citizenship of the state, as afterwards developed would be the case.

It has long been the custom in Oklahoma, and the policy of the state, in building such permanent roads as contemplated in Harmon county, to do so by the use of federal aid funds and state funds, a matter of common knowledge among most laymen and all officials interested in road building. The plaintiff, board of county commissioners, must have known it. And when the contract was made between the plaintiff and the State Highway Commission, it must have been contemplated by the parties that federal aid funds would be used in the construction of this road, and that, in constructing this road, as in constructing all roads, the State Highway Commission must be permitted to so act as to preserve the interests of the state as a whole, in the obtaining in general of federal aid funds for use in the state. The right of the state as a whole to have the State Highway Commission so act is certainly paramount to any rights of the plaintiff, when those rights so sharply conflict, as is shown in this case. The State Highway Commission has the discretion in the first instance to determine as to the location and improvement of highways. It has the right to determine that it will construct a certain highway, or that it will not. If it concludes to build a certain highway. and before doing so there arises or intervenes a duty to the state as a whole, or an emergency. or change in conditions, or circumstances of such serious proportions as are disclosed by the record in this case, surely the State Highway Commission must be accorded the right to postpone, or, if reasonably and in good faith deemed necessary, to abandon such project, even though a promise may have been made to a board of county commissioners to complete such project.

No one county of the state will be heard to say that it has so contracted with the State Highway Commission as to obligate and bind the State Highway Commission to discharge a duty in and to that county in all events, and to the exclusion of the obligations and duties of the State Highway Commission to the remaining 76 counties of the state and the citizens thereof, and in disregard of the serious consequences thereof to the balance of the state, as may be disclosed by subsequent developments.

In this case, after the State Highway Commission had promised the plaintiff, or contracted with plaintiff. to construct the highway along the fixed route, there arose a controversy between the State Highway Commission and certain federal agencies as to the construction of the "south road." In the judgment of the State Highway Com-

mission it became necessary to abandon the "south road" to avoid loss of federal aid funds in large sums, and this it did. Such conclusion, of necessity, by the State Highway Commission, was justified by the facts in this case as disclosed by the stipulation of facts made by the parties. Such action was in the interest of the state as a whole, and was a proper exercise of discretion in the discharge of duties to the state, and while such action by the State Highway Commission was contrary to its contractual duty to the plaintiff in this action, it was in keeping with its paramount duty to the state as a whole, and was right and proper.

We hold, then, that the State Highway Commission had the right in this case to abandon the "south road," although it had agreed with plaintiff to build it, but it had no right to break its contract with plaintiff and at the same time to keep all the money plaintiff had paid it to build the road. If the State Highway Commission had the right to abandon a part of the "fixed route," and still retain all of the money paid to it by the plaintiff, then it could equally well have abandoned a larger part and still retain all the money, and it would be but a step farther to say the money could be kept, though all the fixed route were abandoned. In this case, after the contract with plaintiff was made, and after plaintiff had paid in the $75,000, if a federal controversy or objection had arisen and assumed such proportions as to warrant it, the State Highway Commission might have deemed it proper and necessary to abandon the entire fixed route, or to postpone it for such indefinite time as to amount to an abandonment, but surely it could not have so acted and still kept the money paid in by plaintiff on the contract. We require citizens to deal fairly with each other in the cancellation or abandonment of contracts in whole or in part, and we should require no less of an agency of the state which has contracted with an agency of one of the counties of the state.

On account of the various duties of the State Highway Commission to the state as a whole, and on account of the requirements of this case for the exercise of discretion in the discharge of such duties, we are compelled to sustain its right to abandon a portion of its contract with the plaintiff, which it did when it abandoned the "south road." But the State Highway Commission must exercise this right in keeping with the principles of right and justice, which would require the return to plaintiff of a portion of the $75,000, equal to the portion of the contracted fixed route which was abandoned.

But the State Highway Commission says it should not return any of plaintiff's money, because all of plaintiff's money was expended in constructing the highway on the part of the fixed route referred to as the "completed road." It is shown that the "completed road" cost more money than the $75,000 paid in by the plaintiff. But there is no more reason to say that all of plaintiff's money was spent on this part of the fixed route than there is reason to say that the "completed road" was paid for wholly with state funds and federal aid funds, and that all of plaintiff's money was retained to be expended on the balance of the fixed route, the "south road." Neither of these extreme rules would be fair. The just calculation would be, that a portion of plaintiff's money and a portion of state funds and federal aid funds were used together to pay for the "completed road," and that a portion of plaintiff's money equal in proportion to the balance of the contracted "fixed route," was retained to be spent in constructing such balance of the road. This balance of the $75,000 is a trust fund in the hands of the State Highway Commission, and should be returned to plaintiff. It should be noted that the federal bureau made no objection to the construction of the "completed road," but, on the contrary, included it in the federal program as a part thereof.

When the trial court refused to enjoin the construction of the "north road," and refused to compel the construction of the "south road," it did not err. But it was error to refuse plaintiff a return of that portion of Harmon county funds deposited with the State Highway Commission to construct certain designated roads, which was not used for the purpose for which it was voted, nor according to the agreement between the county commissioners and the State Highway Commission to complete the entire "fixed route."

For the reasons stated, this cause is reversed and remanded, with directions to the trial court to grant plaintiff a new trial, and upon a retrial to determine the equitable ratio, or the proportionate part, of the total contracted "fixed route," which is included in the abandoned portion thereof in the "south road," and to adjudge plaintiff entitled to the return of an equal proportionate part of the $75,000 paid the State Highway Commission by plaintiff, governed by the rules of law relating to tracing and disposition of trust funds.

RILEY, C. J., CULLISON, V. C. J., and SWINDALL, ANDREWS, McNEILL, OSBORN, BAYLESS, and BUSBY, JJ., concur.