## BOARD OF COUNTY COM'RS OF CANADIAN COUNTY et al. v. STATE HIGHWAY COMMISSION et al.

No. 24080. March 3, 1936.

S. T. Roberson, Co. Atty., J. A. Rinehart, and Gus Rinehart, for plaintiffs in error.

J. Berry King, Atty. Gen., and W. C. Lewis, for defendants in error.

PER CURIAM. This action was commenced in the district court of Oklahoma county by the board of county commissioners of Canadian county, hereinafter referred to as plaintiffs, against the State Highway Commission of Oklahoma, hereinafter referred to as defendants, by the filing of a petition for a writ of mandamus, ordering and directing the defendants to forthwith construct a hard pavement on the state highways in Canadian county, beginning at a point approximately 3½ miles south of Calumet and running north to Calumet, thence in a westerly direction to the Blaine county line, near the town of Geary, Okla.

On the 19th day of May, 1927, plaintiffs entered into a contract with the defendants; the important paragraphs material to the issues involved herein are as follows:

"It is, therefore, agreed by and between the parties hereto that the party of the first part vacate and abandon all of that portion of State Highway Nos. 2 and 3 running through Canadian county, Okla., and otherwise known as the Meridian and Postal Highways, respectively, and that the party of the second part take over and designate the said highways as a part of the Canadian county highways; that party of the second part will, after the approval and sale of the bond issue, deposit with the party of the first part the sum of $500,000 of the proceeds of said sale, with which party of the first part agrees to perform all necessary work, let the contracts for and supervise the construction, draining, grading and hard surfacing the said highways herein referred to; that after the said sum of $500,000 has been expended by said party of the first part in said construction work, or at any time agreeable to party of the first part, the party of the second part agrees to vacate said highways herein referred to and party of the first part agrees to accept said highways and redesignate same as state highways and party of the first part agrees to fully complete the hard surfacing of the two said highways throughout Canadian county without additional cost to party of the second part, said party of the first part agreeing to complete the hard surfacing of the said highways at the earliest time possible.

"Said party of the first part further agrees with said second party, for and in consideration of the above performances and promises of the party of the second part, that party of the first part will adhere to and will not change the designation of the routes of said highways as is now agreed upon and as same have been designated by party of the first part as to routing, in the motion adopted on March 23, 1927, by party of the first part, and heretofore referred to."

There is no dispute as to the making of the contract. Plaintiffs executed their part of the contract by paying over to the defendants the sum of $500,000.

Defendants have expended approximately $1,554,876.93 in performing their part of the contract, and have performed their part of the contract except the hard surface pavement of the highway routed through Calumet, and on to the Blaine county line.

At the time the contract was entered into, U. S. Highways 66 and 270 and Oklahoma State Highway 3 were routed west from El Reno to a point approximately 3½ miles south of Calumet, thence north to Calumet, thence west to Geary in Blaine county, and at Geary, U. S. Highway 66 routed in a southwesterly direction to Bridgeport.

The defendants now propose and have taken steps to construct what is termed a cut-off, starting at a point about five miles south of Calumet and extending west to Bridgeport. Over this cut-off will be routed U. S. Highway 66, thus shortening the distance approximately 15 miles. It is this rerouting of U. S. Highway 66 and the construction of the cut-off that brings on the issues between plaintiffs and defendants.

Plaintiffs contend that defendants should complete the hard surface pavement through Calumet and on to the Blaine county line before constructing the cut-off, and that defendants have no right to change the routing of U. S. Highway 66 from its established course as designated in the contract.

A stipulation of facts was prepared and filed by the parties at the inception of the trial, after which testimony was heard by the court. The writ of mandamus was refused, and unless the court abused its discretion, the decree should be affirmed.

Plaintiffs set out the following assignments of error:

(1) That the court erred in overruling motion of plaintiffs in error for new trial.

(2) That said court erred in not rendering judgment for the plaintiffs in error on the pleadings.

(3) That the decision of the court is not sustained by the record and is contrary to law.

In support of its assignments of error, plaintiffs brief two propositions:

(1) After discretion has been exercised by a board of commissioners in the performance of a contract, it then becomes the ministerial duty of the board, under the law, to complete the contract.

(2) When the time came that the State Highway Department had sufficient funds to construct the highway as designated, and, instead of doing so, commenced the construction of the same highway a few miles away from the route designated in the contract, providing for construction of the designated road the earliest time possible, and plaintiffs were entitled to the writ of mandamus.

When do the defendants' discretionary powers end and their ministerial duties begin?

Section 10089, O. S. 1931:

"* * * The State Commissioner of Highways shall have power to make all final decisions affecting the work provided for herein, and all rules and regulations he may deem necessary not inconsistent with this act, for the proper management and conduct of said work and for carrying out all of the provisions of this act in such manner as shall be to the best interest and advantage of the people of the state."

Section 10091, O. S. 1931:

"* * * The State Highway Commission shall have power to make all final decisions affecting the work provided for herein, and all rules and regulations it may deem necessary, not inconsistent with this act, for the proper management and conduct of said work, and for carrying out all of the provisions of this act, in such manner as shall be to the best interest and advantage of the people of this state. * * *"

Sections 10089 and 10091 vest in the defendants the authority to make final decisions affecting all state highway construction, etc. To render "final decisions" necessarily and incidentally includes discretionary powers.

The law in force at the time a contract is made, and applicable thereto, becomes a part of the contract as fully as if its provisions had been incorporated in said contract, and that portion of the contract, to wit, "said party of the first part agreeing to complete the hard surfacing of the said highway at the earliest time possible" must be construed with the statutes to read as follows:

"Said party of the first part agreeing to complete the hard surfacing of the said highway at the earliest time possible, in such manner as shall be to the best interest and advantage of the people of this state"; hence, the discretionary powers of the defendants become a continuing function in favor of the people of the state.

Plaintiffs assign considerable weight to that clause of the contract, to wit, "that the party of the first part will adhere to and will not change the designation of the routes of said highways as is now agreed upon and as same has been designated by the parties of the first part as to routing, in the motion adopted on March 23, 1927, by party of the first part, and heretofore referred to," etc. This portion of the contract is contrary to the law and public policy and therefore void.

· "The Constitution of Oklahoma expressly reserves to the state control over all public highways, including the roads, streets, and alleys of its municipalities. The opening, construction and maintenance of public highways is purely a governmental function, whether done by the state directly or by one of its municipalities, for which the state is primarily responsible." Byars v. State, 2 Okla. Cr. 481, 102 P. 804.

In Flatt v. Department of Public Works & Bldgs. (1929) 335 Ill. 558, 167 N. E. 772, it was held that the paramount duty of highway officers in determining the location or routes of a state highway is to consider the primary interest of the state at large, and not that of any particular locality. Higg v. Department of Public Work & Bldgs. (1929) 336 Ill. 396, 168 N. E. 337; Fisher v. Department of Public Works & Bldgs. (1930) 338 Ill. 222, 170 N. E. 283; Rode v. State Highway Commisson (1929) 58 N. D. 249, 225 N. W. 801; Chcago, N. S. & M. R. Co. v. Il'inois Commerce Commission (1933) (Ill.) 188 N.E. 177; Board of Com'rs of Harmon County v. Oklahoma State Highway Commission, 163 Okla. 207, 23 P. (2d) 681.

It is held in Board of Com'rs of Harmon County v. Oklahoma State Highway Commission, supra:

"The State Highway Commission has no right by contract or arrangement or promise to, or with, any board of county commissioners of this state to give or grant or contract away, its paramount duty to the state as a whole nor can the State Highway Commission by any such contract be deprived of the right and duty to consider and be guided by the rights and interests of the remaining citizenship of the state, in the location and improvement of public highways, and in the prosecution of the general high-

way program and policy of the state, subject, however, to the rule that funds derived from the sale of voted bonds must always be used and expended only for the purpose for which they were voted."

It is an elementary rule of law that governmental duties or powers cannot be contracted away; hence, the defendants were legally vested with the authority to change the routing of U. S. Highway 66 and proceed with its construction of the cut-off, if by so doing, in its judgment, it would "be to the best interest and advantage of the people of the state."

The testimony establishes the fact that defendants still recognize the contract, and intend to comply with its terms by paving the highway beginning approximately 3½ miles south of Calumet, north to Calumet, thence west to the Blaine county line; that the $500,-000 which was derived from the Canadian county bond issue has all been spent on highways in Canadian county, none of which will be spent on the construction of U. S. Highway 66 cut-off, and the cut-off does not change the routing upon which the bond money is to be spent.

If abandonment of the contracted project by the defendants is a fact, then plaintiff has a legal remedy for recourse.

It is held in Board of County Commissioners of Harmon County v. State Highway Commission, supra:

"When a highway project, to be completed by joint use of county funds, together with other funds under the control of the State Highway Commission, is rightfully abandoned before any work is done thereon, the whole of the funds advanced thereon by the county must be returned. If such project is partially completed and the remaining portion thereof justifiably or rightfully abandoned, then a portion of the funds advanced by the county must be returned to the county. In case of any such partial abandonment of any such project, the equitable ratio which the abandoned portion of the project bears to the whole project must be determined, and an equal ratio or proportion of the funds advanced by such county must be returned as the unused portion of the county's money."

"Mandamus is not a writ of right, but one resting within the sound discretion of the court." Board of County Com'rs v. Sapulpa, 162 Okla. 253, 20 P. (2d) 147.

"The State Highway Commission will not be required by mandamus to construct a highway which it may justifiably refuse to construct." Board of County Commissioners v. State Highway Commission, 163 Okla. 207, 23 P. (2d) 681.

Finding no abuse of discretion on the part of the trial court, the judgment is affirmed.

The Supreme Court acknowledges the aid of Attorneys Wm. T. Rye, Carey Caldwell, and Frank Ertell in the preparation of this opinion. These attorneys constituted an advisory committee selected by the State Bar, appointed by the Judicial Council, and approved by the Supreme Court. After the analysis of law and facts was prepared by Mr. Rye, and approved by Mr. Caldwell and Mr. Ertell, the cause was assigned to a Justice of this court for examination and report to the court. Thereafter, upon consideration, this opinion was adopted.

McNEILL, C. J., OSBORN, V. C. J., and BUSBY, PHELPS, and CORN, JJ., concur.