STATE of Oklahoma, Plaintiff in Error,

v.

T. J. ANDERSON and Board of County Commissioners of Ottawa County, Oklahoma, Defendants in Error.

No. 36496.

Supreme Court of Oklahoma.

July 2, 1957.

Rehearing Denied Sept. 10, 1957.

Mac Q. Williamson, Atty. Gen., James C. Harkin, Asst. Atty. Gen., for plaintiff in error.

Kelly Brown, Muskogee, John M. Wheeler, Tulsa, Charles C. Chesnut, Miami, for defendants in error.

PER CURIAM.

Action by T. J. Anderson against the State, et al, for alleged unlawful taking, appropriation and conversion of bridge materials which were the personal property of the plaintiff. The District Court of Ottawa County sustained a demurrer to plaintiff's petition, and the plaintiff elected to stand on his pleadings and appealed.

On appeal, in disposing of the case, we held that where a statute (S.B.1937, Laws of 1947, P. 702) waived immunity of the State and authorized purchaser of bridge materials from county commissioners to sue for damages because of unauthorized appropriation of such materials by the State, the fact that board of county commissioners was made party defendant upon refusal to join as party plaintiff was not fatal to jurisdiction of trial court, as it would be assumed that the legislature intended to waive immunity as to all parties necessary to final determination of questions arising in the action. Anderson v. State, 204 Okl. 537, 231 P.2d 990, and cited cases. Upon a remand to the trial court, the cause was tried on its merits, resulting in a judgment for the plaintiff. From that judgment the State appeals.

The judgment was rendered for the amount of the proven value of the materials taken and appropriated and for interest on the value thereof from date of appropriation.

The State raises again the questions of the sufficiency of plaintiff's pleadings and inability of the plaintiff to sue the State without its consent, arguing that S.B. 137, supra, did not and could not waive the State's immunity from liability for such taking.

The pleadings are substantially the same as when this case was first before us, Anderson v. State, supra, and the question of the State's waiver of immunity from being sued remains the same; therefore, since these questions were then decided in favor of plaintiff, they are no longer subject to argument. They are settled by the law of the case as enunciated therein.

It is conceded by the State that the material in question was taken by its employees without the permission or consent of plaintiff (who had allegedly purchased it from the Ottawa County Commissioners) and used in other construction for the State. It is unquestioned that the bridges from which the materials were taken were purchased and built by Ottawa County, Oklahoma, from the proceeds of a bond issue for that purpose. It is further conceded that the highway, which included the two bridges, was originally a part of the Ottawa County highway system, and that the State Highway Commission took this particular highway over and operated it as a state highway until it was abandoned.

The plaintiff alleged and proved his purchase of the bridges from the board of county commissioners after the abandonment of the bridges and highway by the State, which facts now inhere in the jury's verdict and judgment based thereon, and argues that when the State so abandoned the highway, exclusive ownership and control of such roads and bridges reverted to the Board of County Commissioners, who had a right to, and did, sell the same to plaintiff. We agree.

In Hillsdale Co. v. Zorn, 187 Okl. 38, 100 P.2d 436, 438, we said:

"The statutes pertaining to the establishment and maintenance of highways reveal no legislative disposition to deprive the county at once and for

all time of its interest in a road when it is taken over by the state. It is true, when the road is taken over by the state, said road no longer remains a county highway. Sec. 10090, O.S.1931, 69 Okla.St., Ann., sec. 44. But that does not mean that abandonment by the state would vacate, ipso facto, a highway formerly dedicated as a public road. In such case the road resumes its status as a county road * * *."

Without further narration of the evidentiary factual situation, it is sufficient for us to say that after a careful examination of the entire record, we are of the opinion that the jury verdict and judgment based thereon is reasonably sustained by the evidence. Under such circumstances this court will not disturb the same.

Other questions are raised by the appellant, but they are of such nature as not to affect any substantial constitutional or statutory rights of the State.

Judgment affirmed.

WELCH, C. J., CORN, V. C. J., and JOHNSON, BLACKBIRD and CARLILE, JJ., concur.

DAVISON, HALLEY, WILLIAMS and JACKSON, JJ., dissent.

WILLIAMS, Justice (dissenting).

The majority opinion states:

"It is further conceded that the highway, which included the two bridges, was originally a part of the Ottawa County highway system, and that the State Highway Commission took this particular highway over and operated it as a state highway until it was abandoned."

This statement is at least partially incorrect, and is somewhat misleading. It was not conceded that the bridge here in question was originally a part of the Ottawa County highway system, and it was definitely not conceded that such bridge had ever been abandoned by the State Highway Commission.

The majority opinion further states:

"The plaintiff alleged and proved his purchase of the bridges from the board of county commissioners after the abandonment of the bridges and highway by the State, which facts now inhere in the jury's verdict and judgment based thereon, and argues that when the State so abandoned the highway, exclusive ownership and control of such roads and bridges reverted to the Board of County Commissioners, who had a right to, and did, sell the same to plaintiff."

This statement, too, is somewhat incorrect and misleading. The majority opinion does not even state, much less discuss, the principal contentions presented by the plaintiff in error in this appeal.

The principal issue presented to the trial court was whether or not plaintiff was the owner of the bridge materials in question on August 21, 1941, and such is one of the principal questions presented by this appeal. Defendant urges, as one of its propositions of error, that plaintiff has not shown title to or right of possession of the property herein involved, but that on the contrary both the pleadings and the evidence disclose that the plaintiff had no title to or right of possession of such property and therefore is not entitled to any recovery herein.

The evidence, which was for most part stipulated and uncontroverted, revealed the following situation:

The two bridges here involved were generally known as the "Twin Bridges" and were constructed in the year 1916 by the Board of County Commissioners of Ottawa County, Oklahoma, apparently with a portion of the proceeds of a bond issue, as a part of a "state road", which road was thereafter designated as "U. S. Highway 60". On November 6, 1930, the State Highway Commission, pursuant to statutory authority now found in 69 O.S.1951, § 44, designated the public highway of which the "Twin Bridges" were a part as a part of the "State Highway System".

When construction of the Grand River Dam across the valley of the Grand River (the name given to the stream formed by the junction of the Neosho River and the Spring River, a short distance below the two bridges here involved) was undertaken by the Grand River Dam Authority so as to impound the waters of said stream to an elevation of 750 feet, it became apparent that all highways and bridges in the reservoir area below such elevation would be inundated upon completion of the dam and would have to be reconstructed above such elevation or abandoned. The "Twin Bridges" and the highway approaches thereto were within such reservoir area and below such elevation. On January 5, 1940, although the Grand River Dam was nearing completion, the Grand River Dam Authority had not acquired any rights as to any highways or bridges in Ottawa County and had not made any arrangements to reconstruct or replace any such highways or bridges, and the Board of County Commissioners of Ottawa County commenced cause No. 15096 in the District Court of Ottawa County against said Grand River Dam Authority for the purpose of obtaining a writ of mandamus requiring said authority to construct or reconstruct three bridges, together with the county roads leading thereto, which were specifically described. The "Twin Bridges" were not mentioned in said cause No. 15096, nor was the highway on which they are located.

On March 14, 1940, the State of Oklahoma commenced cause No. 15174 in the District Court of Ottawa County, Oklahoma, for the purpose of enjoining and restraining the completion of the Grand River Dam until such time as the Grand River Dam Authority should pay to the State of Oklahoma the necessary cost of relocating and constructing that portion of the State Highway System, together with the bridges thereon, which would become inundated upon completion of said dam.

On or about October 4, 1940, the State Highway Commission, having decided to relocate that portion of the U. S. Highway 60 upon which the "Twin Bridges" were located, entered into a contract with Mr. Buy James for the construction of the highway as relocated, and of two bridges across the same streams, about 500 feet upstream from the old "Twin Bridges", and for the dismantling of such old bridges when such new construction should be completed and ready for use by the public; and shortly thereafter Mr. James entered into a sub-contract with the plaintiff herein, T. J. Anderson, under which plaintiff was to dismantle the old bridges involved and be paid the sum of $2,000 therefor.

On December 28, 1940, the Board of County Commissioners of Ottawa County entered into an agreement with the Grand River Dam Authority for the purpose of settling all damages to county highways, roads and bridges lying below 750 feet elevation occasioned by the construction, operation and maintenance of the Grand River Dam. Under the terms of said agreement the Grand River Dam Authority agreed to pay said Board of County Commissioners the sum of $55,000, and said Board of County Commissioners agreed to acquiesce in the construction, maintenance and operation of the Grand River Dam and the inundating and overflowing of all county roads, bridges and highways occasioned by maintaining the level of the water impounded by said dam at 750 feet elevation and to release said authority from all claims for damages caused thereby, agreed to remove forthwith at its own expense the Bee Creek bridge, agreed to transfer to said authority all right, title or interest that the County of Ottawa might have in all roads, bridges and highways which would be inundated or overflowed by the waters of Grand Lake when maintained at elevation 750 feet, except the Spring River bridge across Spring River and the Conner bridge across the Neosho River, and to dismiss with prejudice case No. 15096 above referred to. Such agreement was subsequently carried out by both parties in full.

On December 31, 1940, the Board of County Commissioners of Ottawa County entered into a contract with plaintiff whereby it agreed to sell the steel, wood and all salvage of the "Twin Bridges" and the Bee Creek bridge for the sum of $2,000 and the further consideration that plaintiff remove said Bee Creek bridge from the Grand Lake and shoot down the piers of said bridge to the satisfaction of the Grand River Dam Authority. Said contract specifically provided that the sum of $2,000 must be paid on or before June 1, 1941, and that title to said bridge materials would not pass to plaintiff until said amount had been paid in full. Pursuant to said contract, plaintiff removed the Bee Creek bridge from the lake and shot down the piers of said bridge. He paid only $400 of the purchase price by June 1, 1941, however, and has never paid the remainder thereof in the amount of $1,600.

On February 21, 1941, the State of Oklahoma entered into a stipulation and agreement with the United States of America and the Grand River Dam Authority for the purpose of settling all claims for damages to the state highway system resulting from construction, operation and maintenance of the Grand River Dam. Under the terms of this stipulation and agreement the United States of America agreed to contribute specified sums of money to the construction or reconstruction and relocation of specified state highways and bridges in the reservoir area and the State of Oklahoma agreed to accept such contributions in full satisfaction of all damages to its state highway system resulting from the operation of the Grand River Dam. U. S. Highway 60 and the "Twin Bridges" were specifically listed in said agreement as being one of the necessary relocation projects in which the United States of America was to participate by the contribution of funds. Under the terms of such agreement the United States of America was to contribute the sum of $118,316.80 to the relocation and construction of "Twin Bridges" and the State of Oklahoma was to carry out the actual relocation and construction thereof and contribute the sum of $105,683.20 thereto. As a further part of such agreement, the State of Oklahoma agreed to dismiss cause No. 15174 above referred to, and the United States of America agreed to dismiss civil action No. 351 in the United States District Court for the Northern District of Oklahoma, which had been filed by it as a result of the Grand River Dam controversy. Such agreement was subsequently carried out in full by the parties thereto.

Some time prior to August 15, 1941, the roadways and bridges involved in the relocation of that part of U. S. Highway 60 upon which the old "Twin Bridges" were located, and the dismantling of said "Twin Bridges" were completed by the State Highway Commission, without said highway or bridges ever having been abandoned as such, and on or about August 15, 1941, said commission commenced removing the materials derived from the dismantling of said "Twin Bridges" for use in the construction, maintenance and repair of other bridges located upon state highways throughout the state. By August 21, 1941, all of such materials had been removed from the site of said bridges for such purpose.

A review of the evidence, which has been hereinabove summarized, convinces me that defendant's contention that the evidence discloses that plaintiff had no title to, nor right of possession of the bridge materials here involved, is well taken and should be sustained.

Section 1, Article 16, of the Constitution of the State of Oklahoma expressly reserves to the state control over all public highways, and the opening, construction and maintenance of public highways is purely a governmental function, whether done by the state directly or by one of its municipalities, for which the state is primarily responsible. Board of Com'rs of Canadian County v. State Highway Commission, 176 Okl. 207, 55 P.2d 106; Byars v. State, 2 Okl.Cr. 481, 102 P. 804. When

the "Twin Bridges" were constructed in 1916 there was, under the statutes then in force, no such thing as a "county" road or highway, but only "township roads" and "state roads". Such statutes imposed upon the counties of the state the duty of constructing and maintaining such "state roads" and authorized the several counties to issue bonds for constructing such roads or bridges thereon. Chapter 32, Oklahoma Session Laws 1909; Chapter 173, Oklahoma Session Laws 1915; Chapters 22, 28 and 30, Oklahoma Session Laws 1916. The "Twin Bridges" here involved were built in 1916 as a part of a "state road" pursuant to the foregoing statutes and were constructed for the use and benefit of the general public. Under the above mentioned provisions of the Constitution and Statutes of the State of Oklahoma, such bridges, when constructed, belonged to the State of Oklahoma as the governmental and legal entity representing the general public and the people of the state.

In 1923 the legislature enacted chapter 112, Oklahoma Session Laws 1923, which provided, among other things, that the network of connecting "state roads" constructed under authority of the 1915 and 1916 acts should be known as the "State Road System", the supervision and control of the construction and maintenance of which was thereby placed in the State Commissioner of Highways.

By the enactment of chapter 48, Oklahoma Session Laws 1924, (now found as subsequently amended in 69 O.S.1951, § 44) the legislature divided the highways of the State of Oklahoma into three classes, namely, "state highways", "county highways" and "township roads." Under the provisions of such act, "state highways" were those inter-county and inter-state highways, and parts thereof, which should be designated by the State Highway Commission as parts of the "State Highway System" embracing at least five per cent of the highway mileage in each county and "county highways" were those roads within a county, except those taken over by the State Highway Commission as "state highways", which should be designated by the Board of County Commissioners of the county as "county highways" and embracing not more than 25 per cent of the highway mileage in the county. Under the further provisions of such act, the State Highway Commission was given responsibility for the supervision and control over the construction, repairs and maintenance of all "state highways" and bridges thereon, and the Board of County Commissioners of each county was given responsibility for and exclusive jurisdiction over the designation, construction, maintenance and repair of all such "county highways" and bridges thereon.

Although under said 1924 Act the Board of County Commissioners of Ottawa County could have designated that portion of the highway involved herein as a "county highway", and thus have acquired exclusive jurisdiction thereover, the evidence does not reveal that it ever did so. On the contrary, the evidence affirmatively establishes that the two bridges involved here were located on an inter-state highway which was designated by the State Highway Commission as a part of the state highway system pursuant to the provisions of said 1924 Act. Even if the Board of County Commissioners had designated such highway as a "county highway", and there is no evidence that it did, it would not have remained a "county highway" after being designated a "state highway" by the State Highway Commission. Hillsdale Co. v. Zorn, 187 Okl. 38, 100 P.2d 436.

I am therefore of the opinion that the bridges here involved were at all times, the property of the State of Oklahoma, and at no time the property of Ottawa County, and consequently plaintiff acquired no title thereto by virtue of his contract with Ottawa County. In this connection, I am unable to reconcile plaintiff's claim of title to these bridges with the fact that he was paid to dismantle such bridges by the State of Oklahoma. I know of no theory upon which plaintiff would be entitled to pay from the State of Oklahoma

for dismantling his own bridges or even the bridges of Ottawa County, and his acceptance of such pay is completely inconsistent with his present assertion of ownership of such bridges.

The citation in the majority opinion of the case of Hillsdale Company v. Zorn, supra, as authority for the proposition that upon abandonment by the state of a state highway, such highway resumes its status as a county road, is completely irrelevant here. In the first place, under the evidence in this case, the bridges in question and the highway of which they were a part, were never parts of a county road and therefore could not resume any such status. In the second place, the bridges in question and the state highway of which they were a part, were never abandoned by the state. Relocation of the bridges in question and a portion of the road of which they were a part, was made necessary by the construction of the Grand River Dam and the resulting inundation of the area by water. The bridges in question were kept in continual use as a part of a state highway until such time as a new or substitute bridge was completed and the bridges in question were then immediately dismantled and removed. There was never any abandonment and therefore never any occasion for any reversion.

Even if there had been a reversion to Ottawa County, however, such would not have inured to the benefit of plaintiff. As I have already pointed out, the County Commissioners of Ottawa County entered into a settlement with Grand River Dam Authority under the terms of which Ottawa County conveyed and transferred to the Grand River Dam Authority, all of its right, title and interest in and to all roads, bridges and highways in Ottawa County which would be inundated by maintaining Grand River Lake at a level of 750 feet elevation, save and except only the Spring River bridge and the Conner bridge and the materials from the Bee Creek bridge. If the bridges in question had reverted to Ottawa County, as held by the majority opinion, then Ottawa County conveyed all of its right, title and interest therein, to the Grand River Dam Authority by virtue of the foregoing settlement agreement, and

of course had no interest left to convey to the plaintiff. It therefore appears to me that regardless whether the "Twin Bridges" were the property of the State of Oklahoma, as I believe they were, or whether they were the property of Ottawa County, as held by the majority opinion, they were at no time the property of plaintiff and never became such, and plaintiff has therefore shown no right of recovery for the alleged wrongful conversion thereof.

I am therefore of the opinion that the judgment for plaintiff be reversed and the cause remanded with instructions to enter judgment for defendant. I therefore respectfully dissent.