STATE of Missouri ex rel. STATE HIGH-
WAY COMMISSION of Missouri,
Relator,

v.

Honorable R. Kenneth ELLIOTT, Judge of
the Circuit Court of Clay County, Missouri,
Division No. 2, Respondent.

No. 47331.

Supreme Court of Missouri,

En Banc.

Aug. 5, 1959.

Robert L. Hyder, Wilkie Cunnyngham, Jefferson City, for relator.

Ward A. Dorsey, North Kansas City, for respondent.

HOLLINGSWORTH, Chief Justice.

In this original proceeding, relator, State Highway Commission of Missouri, seeks to prohibit respondent, the Honorable R. Kenneth Elliott, Judge of Division 2 of the Circuit Court of Clay County, Missouri, from assuming jurisdiction of an action brought in that court by the Village of Claycomo, Missouri, to enjoin the Commis-

sion and its construction contractor, J. A. Tobin Construction Company, from constructing and maintaining Interstate Highway 35 through said village in such a manner as to obstruct certain of its public streets. Following issuance of our provisional writ, respondent filed (1) motion to strike portions of relator's petition on grounds they were immaterial and (2) return to the provisional writ. The sole question presented by the briefs upon which the cause was argued and submitted is whether the second amended petition, of which respondent has assumed jurisdiction, presents a justiciable controversy.

In its petition for issuance of the writ, relator alleges that pursuant to the provisions of the Federal-Aid Highway Act, approved June 29, 1956, Chapter 462, Public Law 627, Title 23 U.S.C.A. §§ 157, 158, 163,[1] it has located, designed and is constructing a state highway, Interstate Route 35, in a west-east direction through the Village of Claycomo, Missouri, as a part of the 41,000 mile National System of Interstate and Defense Highways of the United States; that said highway, as located, designed and now under construction, consists of two 24-foot concrete pavements separated by a 32-foot median with grass or shrubs isolating traffic in one direction from all opposing traffic in other directions; that no direct access will be permitted to or from the two pavements except at certain designated locations or traffic interchanges and no traffic or intersecting streets or highways may cross at the same grade; that the Village of Claycomo, lying "just outside" Kansas City, is three-fourths of a mile in width between its east and west limits and has five open and established public streets extending north and south within said limits, to wit: Poe, Riley, Bryant, Emerson and Hawthorne, and two "paper" right of way locations but not open streets, known as Holmes Street, extending along its east limits, and Eugene Field Road, extending along its west limits; that

as the highway passes in a west-to-east direction through Claycomo there are to be grade separations with two of its five open streets; that Poe Street is to be left open and the highway carried over it on twin bridge structures, costing in excess of $120,000, connecting with a dirt fill, approximately 20 feet high; that Bryant Street is also to be left open by means of a single bridge extending over the highway, which at that point is in an earth cut some 20 feet deep; that no traffic will be able to cross the highway on Riley, Emerson or Hawthorne; that the cost of grade separations at those streets, for the saving of only one or two blocks of travel either east or west to the Poe or Bryant grade separations, would be in excess of $500,000; that there never will be sufficient highway funds to meet the constantly existing needs of an adequate state highway system; that the limitations on such funds available for construction and maintenance of a reasonably adequate system requires that said funds be apportioned between all sections of the State on "compromise formulas so as to best meet and serve the most urgent present and future needs of the greatest number in the State as a whole"; that following public hearing, due and timely notice of which was given, to which all interested citizens in Claycomo and other cities were afforded an opportunity to be heard "with reference to the economic effect" of the proposed location of the highway, relator duly published its request for bids and thereafter entered into a contract for the construction of the highway with J. A. Tobin Construction Company; that relator's contract requires the portion of Interstate Highway 35 extending through Claycomo to be constructed within 240 working days (i. e., days in which construction work could be performed) and obligates said contractor to pay to the State estimated damages in the sum of $250 for each day that said work remains unfinished thereafter; and that most of the rough cut and fill grading through Claycomo has been

1. Now 23 U.S.C.A. §§ 103(d), 101(b), 111.

performed and work is being pushed on the grade separation structures to carry the highway over Poe Street and under Bryant Street.

The second amended petition filed by the village alleges that Riley, Emerson and Hawthorne Streets (and Holmes Street and Eugene Field Road) "will be rendered useless as village streets connecting the northern portion of said village with the southern part thereof, and said streets will be obstructed, closed and rendered useless * * * as a means of vehicular or pedestrian traffic at such points"; that "all of said streets are public streets within the confines of said village and have been and are used as such by the citizens of said village"; that, despite requests so to do, the Commission has refused to provide underpasses or overpasses; that "it is entirely practical to construct such overpasses or underpasses"; that "it is not in the public interest and safety that the said five city streets be closed"; that the action of the Commission in so constructing said highway "is arbitrary, capricious and unreasonable" and has been taken without any consultation with the Board of Trustees of the Village "or any opportunity being given to said Board * * * to make provision for changes in said streets so that said highway could be constructed with overpasses or underpasses at said streets, or at least some of them, so that the citizens * * * residing in the northern portion of said village would not be forced to undergo impaired efficiency of the fire protection facilities of said village, which facilities are located in the southern portion of said village"; that the construction of the highway in accordance with the contract will be violative of the due process clauses of the State and Federal Constitutions and in excess of the powers vested in the Commission; and that Claycomo will be irreparably damaged by such action and has no adequate remedy at law. The prayer is that the Commission and its contractor be enjoined from "erecting or maintaining any obstruction on any of the public streets within [the Village's] incorporated limits,· * * * ".

The trial court (respondent herein) denied relator's motion to dismiss said second amended petition, predicated upon grounds that (1) it failed to state a claim upon which relief could be granted, and (2) Article IV, §§ 29 and 30, of the Constitution of Missouri, V.A.M.S., conferred upon relator exclusive authority to locate, relocate, design and maintain Interstate Highway 35, and to limit access to, from or across it as the public interest and safety required. This proceeding was thereupon instituted.

Respondent's brief says: "There is actually only one issue presented in this case and that is whether the judicial department of our government has the power to review in any way or to any extent any action of the State Highway Commission whereby the State Highway Commission attempts to exercise police power." He states his position thus: "[T]he question of the authority of the State Highway Commission to limit access to, from and across state highways where the public interest and safety may require, subject to such limitations and conditions as may be imposed by law, is just not involved in this case. The Village of Claycomo is not demanding any access to, from or across the highway in question. The Village of Claycomo is not complaining as to the location of the proposed highway. All the Village of Claycomo is asking is that the State Highway Commission, in constructing this highway through the Village of Claycomo and across five of its Village streets, be restrained from closing, vacating and blocking said streets without first determining by adequate and reasonable investigation, hearing and conference with the said Village whether such action is necessary in the public interest and safety, or even under the broader interpretation of police power generally, the Village feels that Relator would be acting arbitrarily and unreasonably unless the Relator first affords the Village of

Claycomo reasonable opportunity to meet with Relator, inform Relator as to the local conditions, and determine with Relator what changes in grade, if any are necessary, could be made of said streets by said Village so that said streets could go over said highway or under it and thereby still be usable by the Village as village streets."

Article IV, § 29, of the Constitution provides that the State Highway Commission "shall have authority over and power to locate, relocate, design and maintain all state highways; and authority to construct and reconstruct state highways, subject to limitations and conditions imposed by law as to the manner and means of exercising such authority; and authority to limit access to, from and across state highways where the public interest and safety may require, subject to such limitations and conditions as may be imposed by law." Article IV, § 30, thereof, provides: "For the purpose of constructing and maintaining an adequate system of connected state highways all state revenue derived from highway users as an incident to their use or right to use the highways of the state * * shall be credited to a special fund and stand appropriated without legislative action for the following purposes, and no other: * * (3) In the discretion of the commission to locate, relocate, establish, acquire, construct and maintain the following: * * * (d) any highway within the state when necessary to comply with any federal law or requirement which is or shall become a condition to the receipt of federal funds: * * *".

Section 227.030 RSMo 1949, V.A.M.S. (to which revision all statutory references herein are made unless otherwise indicated), places the state highway system under the control of the Commission and vests it with power to make all final decisions affecting the construction and maintenance of said system, not inconsistent with the provisions of Chapter 227. Section 227.060 provides: "In making decision as to widths, types and character of construction, there shall be taken into consideration the probable volume and weight of intercounty and intracounty vehicular traffic over such state highways, the density of population and the character of the territory through which such state highways are to be constructed."

Section 226.220 creates the "State road fund" and provides: " * * * 3. No payments or transfers shall ever be made from the state road fund except for an expenditure made (1) Under the supervision and direction of the state highway commission; and (2) For a purpose set out in subparagraphs (1), (2), (3), (4), or (5) of section 30, article IV, of the constitution."

Section 108(i) of the Federal-Aid Highway Act, 70 U.S. Statutes at Large, page 380, Title 23 U.S.C.A. § 158(i) [2], provides: "The geometric and construction standards to be adopted for the Interstate System shall be those approved by the Secretary of Commerce in cooperation with the State highway departments. Such standards shall be adequate to accommodate the types and volumes of traffic forecast for the year 1975."

The foregoing provisions of the Constitution of Missouri and the Missouri and Federal Statutes clearly show that relator, working in conjunction with the Federal Government in the construction of Interstate Highway 35, as it passes through the Village of Claycomo, has acted within the powers and authority expressly granted to it. Respondent does not contend otherwise.

The precise extent of the relief sought by the village in its second amended petition is difficult to understand. The brief filed in behalf of respondent says: "[A]lthough the grade of the highway is such that overpasses or underpasses enabling the Village to retain the use of its streets, while in no way interfering with or affecting said highway, would be entirely feasible if the Board of Trustees were given a chance to make any necessary changes in

2. Now 23 U.S.C.A. § 109(b).

grade, relator has refused to make any provision for such underpasses or overpasses or to consult with the Board of Trustees of said Village regarding same or to give said Board of Trustees any opportunity to make provision for changes in said streets so that said highway could be constructed with overpasses or underpasses at said streets, or at least some of them, so that the citizens of said village residing in the northern portion thereof would not undergo impaired efficiency of the Village fire protection facilities which are located in the southern portion thereof."

That statement seems to mean that construction of the highway should be stayed until relator confers with and agrees to meet the demands of the village; that if relator fails or refuses to meet such demands, the case shall be tried and the court shall render some sort of an "if" decree to the effect *if* relator will do *this* or *that,* as the court may deem just, then construction of the highway may continue; otherwise, it may not.

Respondent's argument runs this wise: That although relator is authorized to locate, design and construct the highway precisely as it is doing, yet it is acting without authority or right in refusing to provide for additional underpasses or overpasses or to consult with the Board of Trustees, etc.; that the power granted under the constitution and statutes above referred to "is in no way referable to a situation where a street goes under a limited access highway or over a limited access highway, so long as such underpass or overpass does not in any way affect the public interests and safety in using said limited access highway"; and where it appears that "with no alteration or only such alterations as would be considered reasonable in view of the benefits to be gained thereby, said street could remain open and usable through the construction of overpasses or underpasses at the point of its intersection with such limited access highway, then the State Highway Commission would be acting in excess of its powers were it to attempt to close and thereby vacate or obstruct such street."

In other words, respondent asserts that if a court of equity should find it would be practicable and beneficial to a municipality through which a projected state highway is to run if additional overpasses or underpasses were constructed at certain of its streets and the Commission should refuse to provide them, the court would then have jurisdiction to enjoin the Commission from constructing such highway; even though it was located and designed in strict accordance with the authority expressly and unconditionally granted the Commission under the constitution and statutes of the State.

■ In 39 C.J.S. Highways § 89, pp. 1023–1024, it is said: "While a suit for an injunction sometimes has the character of a direct attack on proceedings for the establishment of a highway, ordinarily an injunction will not lie to prevent the establishment of a highway over which the board of commissioners has taken jurisdiction, unless the proceedings are void or so defective as to be an absolute nullity, since an injunction would amount to a collateral attack. Thus irregularities in proceedings for establishment of a highway cannot be subjected to attack in a proceeding to enjoin the opening of a road, the removal of a fence which obstructed the highway, or the cutting down of banks on lands on the side of the road."

A fairly analogous contention to that here made by respondent came before the Chancery Division of the Superior Court of New Jersey, in City of Newark v. New Jersey Turnpike Authority, 12 N.J.Super. 523, 79 A.2d 897. In that case the controversy arose out of the projected use of a dirt fill 7,100 feet in length in the construction of a turnpike through the city, which, among other things complained of, would dead-end two intersecting streets and interfere with the future construction of other streets. The issue, as defined by the court, 79 A.2d loc. cit. 900, was: "Do the affidavits and

exhibits show a contrariety of opinion or definite facts such as would create an issue on which a finding might be made that the Authority was guilty of a palpable abuse of discretion?" Of that issue, it said, loc. cit. 900: "If differences of opinion such as those presented, no matter with what good faith they were offered, are to be regarded as a basis for a trial on the issue of manifest abuse of authority, the court would have virtual veto power over this legislative agency. Such power does not exist; it is neither desired nor desirable. The limit of the jurisdiction of the court is in the field of manifest abuse by the Authority of its legislatively delegated power. The court cannot become a road builder; it cannot substitute its judgment for that of the Authority." See also Handlan-Buck Company v. State Highway Commission, Mo., 315 S.W.2d 219, 223; Selecman v. Matthews, 321 Mo. 1047, 15 S.W.2d 788, 789–790, 63 A.L.R. 512; Board of Commissioners of Harmon County v. Oklahoma State Highway Commission, 163 Okl. 207, 23 P.2d 681, 91 A.L.R. 235.

■■■ This is not a case where the State Highway Commission has arbitrarily deprived one portion of the village of all access to another portion. Claycomo's second amended petition alleges but one fact upon which it seeks to base its pleaded conclusion that relator's action in making no provision for underpasses or overpasses on more than two of its five open streets was not in the public interest and was arbitrary, capricious and unreasonable, to wit: that the dead-ending of three of its five open north-south streets will impair the efficiency of its fire protection facilities. There is no allegation of fact showing that access from one portion of the village to another is so limited as to impose unreasonable burdens upon the traveling public. There is no allegation of fact showing that relator has funds available, over and above those required to meet far more urgent demands elsewhere in the State, with which to change the design or grade of the highway or in any manner to aid in constructing such overpasses or underpasses. There is no allegation of fact showing that, if such funds were available, the impaired efficiency of the village's fire prevention facilities is so extensive as to convict the Commission of manifest abuse of the power vested in it to allocate said funds to what it deemed more needed elsewhere for the construction and maintenance of an adequate statewide highway system.

We are cited to no principle of law or equity (and know of none) that despite the authority vested exclusively in the Highway Commission by the constitution and statutes to .determine (1) the location and design of the state highway system and (2) the apportionment and expenditure of highway funds, the trial court nevertheless has jurisdiction to enjoin the construction of Interstate Highway 35, as located, designed and now in process of construction, until the Commission complies with any final judgment the court may render with regard to construction of such additional overpasses or underpasses in the Village of Claycomo as the court may deem necessary. Rather does it seem clear that the constitutional and statutory powers expressly and exclusively conferred upon the Commission implicitly deny to the courts any such right. To adopt such a principle, in the absence of a pleading of facts showing bad faith or manifest abuse of the authority vested in relator, would be to ignore the clear wording and intent of the constitution and statutes of this state and amount to judicial usurpation of an exclusively legislative function clearly beyond the inherent and constitutional powers of courts.

We hold that the second amended petition presented no justiciable issue and that respondent acted in excess of his jurisdiction in assuming to entertain it. In the situation here presented, prohibition is the proper remedy. State ex rel. Taylor v. Nangle, Mo., 227 S.W.2d 655, 657.

The provisional rule in prohibition is made absolute.

All concur.